Weygandt, C. J.
 

 In its amended answer the defendant pleaded the defenses of contributory negligence and assumed risk on the part of the plaintiff, as follows :
 

 “Defendant alleges that if the plaintiff did fall from his bicycle as claimed in plaintiff’s petition, such fall and the injuries resulting therefrom resulted directly and proximately from the negligence of the plaintiff himself in riding his bicycle over this crossing at a high and dangerous rate of speed, to wit, twenty-five miles per hour; in riding on the public highway on a bicycle which was unfit and unsafe for use as a vehicle on said highway; in failing to keep his bicycle in proper repair so that it would be safe and fit for riding on the public highway; in failing to exercise his sense of sight and to keep a lookout where he was riding; and in failing to exercise any care for his own safety.
 

 “Plaintiff assumed the risk of the condition of the ' pavement of Glanzman road at this intersection, which condition was open and obvious and known to the plaintiff. ’ ’
 

 Por some reason the plaintiff failed to file a reply to this amended answer, but apparently the trial proceeded as if a reply had been filed.
 

 Both before and after the oral arguments the trial court charged the jury on the defense of contributory negligence. But in each instance the court refused to instruct the jury on the subject of assumed risk.
 

 
 *466
 
 Was this error, as held by the Court of Appeals?
 

 "Contributory negligence” and "assumption of risk” are not synonymous terms, although sometimes loosely and inaccurately so used. 29 Ohio Jurisprudence, 536, Section 91. The former is based on carelessness, the latter on venturousness.
 
 Hunn
 
 v.
 
 Windsor Hotel Co.,
 
 119 W. Va., 215, 193 S. E., 57. The latter derives from the legal maxim
 
 "volenti non fit in
 
 juria,” which means that “to the consenting no injury is done,” or that "a person who consents to a thing cannot complain of it as an injury,” or that "that which, unauthorized, would amount to wrongful injury, subjecting the doer of it to an action for damages by the person injured, loses such character if the person suffering the disadvantage or injury consents to the act.” Bouvier’s Law Dictionary. In the fourth paragraph of the syllabus in the case of
 
 Masters
 
 v.
 
 New York Cent. Rd. Co.,
 
 147 Ohio St., 293, 70 N. E. (2d), 898, this court held:
 

 “A person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposures.”
 

 In the opinion of the Court of Appeals in the instant case'the matter is cogently summarized as follows:
 

 "In the light of these authorities, the defendant was entitled to have its defense that the plaintiff assumed the risk in riding over that crossing submitted to the jury. In it were two fact questions as suggested in the two premises on which the doctrine rests * # *.
 

 "1. Was ‘the extent of the risk fully appreciated’ by plaintiff ? In this connection, account must be taken of the age of the plaintiff, the fact that G-lanzman road was a public highway, the crossing was within the distance of one city block from the school and that plain
 
 *467
 
 tiff had ridden his bicycle over that crossing frequently for nearly two years, and the evidence also showed that at the time of this accident another boy rode over it just ahead of him, and it may easily be inferred that other pupils from the school were accustomed to ride bicycles over that crossing in the condition it was in and had been for some time.
 

 “2.
 
 The other jury question rested on the Qther premise whether plaintiff’s use of the crossing was voluntary; or, to use the language of the Indiana court, whether he was
 
 ‘
 
 without any special exigency compelling him’ to expose himself to that hazard. In that connection, it should be observed that the route he was on was a half mile shorter distance than that by Detroit avenue, the only other alternative he had. That would mean a mile more travel each day. Nothing was said about it in the evidence, but it was argued to the jury that he should have dismounted at the crossing and walked over those ruts. If it was his duty to do that, it was the duty of every other cyclist to do so in all of the months the company suffered it to remain in disrepair. Had that condition been a temporary one, or one which existed for a short time, as was the case in all of the decisions cited or examined on this subject, there might be more point to this argument. * * *
 

 “The most the defendant was entitled to in this respect was the privilege of arguing to the jury and having it decide the questions whether plaintiff appreciated the danger of that crossing, and whether his use of it was voluntary. This would have been accomplished by instruction number four, and the court erred in not giving it to the jury, and in not connecting it up in the general charge, especially when expressly requested to do so.”
 

 However, the plaintiff contends that he is relying* on the violation of an absolute statutory duty imposed
 
 *468
 
 on the defendant by Sections 8843 and 8914, General Code, to keep its public highway crossings “safe” and “in repair”; and he insists that the defense of assumption of risk may not be interposed thereto. A study of the plaintiff’s petition discloses no mention of an absolute statutory duty but only allegations that the defendant “carelessly and negligently” failed to maintain its crossing and that as a direct and proximate result of said “carelessness and negligence” the plaintiff was injured. Furthermore, the provisions that railroad companies shall keep their public highway crossings “safe” and “in repair” are general rather than specific requirements, and negligence is the basis of liability thereunder. As originally enacted, this statute was Section 3324, Revised Statutes, and provided that railroads should construct and maintain fences “in good repair.” In the second paragraph of the syllabus in the case of
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Schultz,
 
 43 Ohio St., 270, 1 N. E., 324, 54 Am. Rep., 805, this court held that the basis of liability thereunder was negligence. 18 Ohio Jurisprudence, 1124, Section 37. In the case of
 
 Taylor
 
 v.
 
 City of Cincinnati,
 
 143 Ohio St., 426, 55 N. E. (2d), 724, this court held that similar provisions in Section 3714, General Code, requiring a municipality to keep its streets open, “in repair” and free from nuisance are general rather than specific requirements, and that the basis of liability for a violation thereof is negligence, unless an absolute nuisance is shown. Hence, the plaintiff in the instant case properly based his petition on the theory of negligence, and, without commenting on the adequacy of the defendant’s special request No. 4, this court is of the opinion that it was proper for the defendant to interpose the defense of assumed risk which should have been included in the trial court’s charge to the jury.
 

 The plaintiff complains further that the Court of
 
 *469
 
 Appeals found misconduct on the part of one of his counsel in the latter’s argument to the jury. A study of the record shows that the court manifestly was justified in holding the argument “inflammatory” and prejudicial.
 

 The judgment of the Court of Appeals reversing the judgment of the Court of Common Pleas and remanding the case for a retrial is affirmed, and the request of the defendant for a final judgment in its favor at this time is denied.
 

 Judgment affirmed.
 

 Matthias, Hart, Zimmerman, Stewart and Taft, JJ., concur.