**COMBS, Plaintiff-Appellant, v. KOBACKER STORES, INC., d. b. a. THE BOSTON STORE, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4877.   Decided February 3, 1953.

Coughlin, Ogier & Lloyd, Ben Ogier, of Counsel, Columbus, for plaintiff-appellant.

Wiles & Doucher, Arthur W. Wiles, of Counsel, Columbus, for defendant-appellee.

## OPINION

By MILLER, J.

This is a law appeal from the judgment of the Common Pleas Court sustaining the defendant's motion for a directed verdict at the close of the plaintiff's case. Although not separately stated and numbered, the petition sets forth two causes of action for which damages are sought:

1. False imprisonment.
2. Assault and battery.

The record reveals that the plaintiff offered evidence showing that on or about the 13th day of March, 1950, she entered the defendant's store upon its invitation· for the purpose of making certain purchases, including some shoes which had been advertised in a Columbus newspaper by the defendant doing business under the name of "Boston Store," the Boston Store being designated as the advertiser.

The evidence further reveals that after purchasing said shoes they were left in the shoe department, which is located in the basement of the Boston Store, for the purpose of going to the defendant's office and arranging a charge account; that after making the proper arrangements and signing the proper charge slips she returned to the basement where the shoes were given to her by a clerk, but not the one who sold them to her; that she then attempted to leave the store by the front entrance on High Street and as she stepped out of the store she was grabbed with great force and violence by the clerk who had waited on her, taking hold of her by the right arm and shoulder, and twisted her around to face him, thereby causing serious injuries, and that he then began to examine the contents of her packages. She was then ordered into the store and taken to the office and later sent home in a taxicab.

The evidence disclosed further that the Boston Store had rented the shoe department to the Epko Shoes, Inc., and that they were the owners of the merchandise in the shoe department and that the clerk who waited upon her and who later was alleged to have assaulted her was an employee of Epko Shoes, Inc. The plaintiff testified that she had no knowledge that the shoe department was owned by Epko Shoes, Inc., until after the suit was filed.

The first question presented is whether or not the defendant can deny that the clerk was its agent by showing that he was employed by the Epko Shoes, Inc., the lessee of the shoe department. This question, it seems, must be answered in the negative, the same having been decided in the case of **Rubbo v. Hughes, 138 Oh St 178,** the first paragraph of the syllabus of which provides:

"1. Where the proprietor of a provision market advertises an article for sale in his market and a purchaser, in reliance that he was buying from such proprietor and without knowledge to the contrary, buys such advertised article at a counter in the market which the proprietor had leased to another, which counter was the only place in the market where the article in question was to be found, the doctrine of agency by estoppel applies, and in an action against such

proprietor for injuries resulting from such sale, the proprietor will not be heard to deny that the lessee of the counter space was proprietor's agent."

The rule is also well stated in **1 O. Jur., page 676, Section 34:**

"If a person holds out another to the public as his agent, he is bound by the acts of that individual, whether he in fact be such agent or not, and the public dealing with the agent is not required first to determine the nature and extent of the authority. It is sufficient if the alleged principal has by his conduct induced the public to deal with such person as his agent, and this inducement may be by overt acts or. words, or by long-continued course of business transactions in ratifying, indorsing, and fulfilling contracts of such person, made on behalf of such principal."

The next question presented is whether the records disclose any evidence tending to establish that the clerk was acting within the scope of his employment at the time the alleged wrongful acts were committed. In determining this question it is necessary and proper to inquire whether he was at the time serving his master. The inference may well be drawn from the evidence presented by the plaintiff that at the time of the alleged assault and detention the agent was engaged in an attempt to protect the master's property. We think this was an implied duty imposed upon him and he therefore may have been acting within the scope of his employment at the time.

In **Biddle v. New York Central Railroad Company, 43 Oh Ap 6,** the Court says at page 8:

"Under certain circumstances the duty of the employee to protect the property of his master may be inferred. West Jersey & Seashore Rd. Co. v. Welsh, 62 N. J. Law, 655, 42 A., 736, 72 Am. St. Rep., 659; McDermott v. American Brewing Co., 105 La., 124, 29 So., 498, 52 L. R. A., 684, 83 Am. St. Rep., 225; Brown v. Boston Ice Co., 178 Mass., 108, 59 N. E. 644, 86 Am. St. Rep., 469."

In Cooley on Torts, Fourth Edition, Volume 3, p. 68, Section 396, it is said:

" 'In determining whether a particular act was done in the course of a servant's employment, it is proper to inquire whether he was at the time serving his master. The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred, or fairly implied from the nature of the employment and the duties incident to it; and, in determining the question of authority, we are to regard the object, purpose, and the end of the employment.' * * * 'The question is:

Was the act done by virtue of the employment and in furtherance of the master's business? And it is sufficient if such act merely incidentally or indirectly contribute to the furtherance of such business.'

*　　　　*　　　　*　　　　*

And where clerks in stores arrest or retain persons on the charge of theft committed on the spot, the proprietor is liable, it being part of their duty to protect the master's goods, and 'when one places his property in the possession and under the control of another, the right to protect that possession, as well as the right to prevent any interference with its immediate use, springs out of the possession and out of the duty to control and manage it,' and the master is liable for the manner in which the servant exercises this authority and for errors of judgment in so doing. 'If property be intrusted to an agent or servant for sale or safe-keeping, there is clearly an implied authority to do all such things as may be proper and necessary for the protection of that property; or, if a servant be assigned to a position requiring the performance of certain duties, he has implied authority to do all such things as may be required to enable him to perform those duties. And for all acts done within the scope of the employment and the limits of the implied authority, the master is liable, however erroneous, mistaken, or malicious such acts may be.'"

Now the trial court appears to have overlooked this implied duty of protecting the master's property, saying as follows:

"Now, considering that rule, was this individual, this clerk, while he was on High Street, performing services peculiar to the defendant's business or affairs on and about the latter's property? The court feels that there is no evidence in the case as to whether he was or not. I believe that is what I indicated yesterday. For some reason he had left the building and gone out on to the sidewalk, and regardless what he might have had in his mind when he stopped the plaintiff and her daughter-in-law, there is no evidence that he was attempting to perform any business on the part of his master; in fact, the evidence, as far as the court's opinion is concerned, shows whatever it was out there was some private enterprise on his part, and the court feels that that conclusion is fortified by the fact that he had sold the shoes, he had directed them to go to the credit department to have their sales slip approved and then he voluntarily left the department to have the shoes delivered to the plaintiff by some other clerk in the department. He has severed his relationship with the transaction, and for some reason had gone out of

the building. So that it appears to the court that whatever he did on High Street was his own enterprise, and nothing —not even from what was said—do we have any indication that he was performing any service with respect to his master's business."

In view of the authorities cited we are of the opinion that an inference may be drawn that the agent was protecting the master's property which had been entrusted to his care and keeping. Although he was not on the premises at the time, being just outside the entrance door, he was so near that the jury could have found that he was about the premises, which meets the requirements pronounced in the case of **Hozian v. Casting Co., 132 Oh St 453, paragraph 1** of the syllabus:

"In an action wherein defendant's liability depends upon proof of a master-servant relation, such relation is prima facie established by showing the alleged servant was performing services peculiar to the defendant's business or affairs on and about the latter's property, and acts done in the rendition of such services may be found to be within the scope of employment. (**White Oak Coal Co. v. Rivoux, Admx., 88 Oh St, 18, 102 N. E., 302,** and **Sobolovitz v. Lubric Oil Co., 107 Oh St, 204, 140 N. E., 634,** distinguished.)"

It does not appear to us that the case of **The Little Miami Railroad Co. v. Wetmore, 19 Oh St 110,** cited by the trial court is on all fours with the case at bar. In the cited case the court found that the assault was in no way calculated to facilitate or promote the business for which the servant was employed.

The court further said on page 132:

"It is not a case of excess of force and violence in executing the authority of the master, but rather an act beyond such authority and foreign to the objects of the employment."

In the instant case the inference is permissible that the alleged wrongful acts were committed while endeavoring to protect the master's property which was under the agent's control. Under such facts the master would be liable, the first paragraph of the syllabus of the case cited, supra, providing:

"A master is not responsible for the wrongful act of his servant, unless that act be done in execution of the authority, express or implied, given by the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged cannot be regarded as the act of the master."

It is our conclusion that the evidence offered by the plain-

tiff was sufficient to establish a prima facie case and that the court erred in instructing the jury to return a verdict for the defendant at the close of the plaintiff's case.

The judgment will be reversed and cause remanded for further proceedings according to law.

HORNBECK, PJ, WISEMAN, J, concur.