LOGSDON, Plaintiff-Appellee, v. MAIN-NOTTINGHAM INVESTMENT COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 2362. Decided May 22, 1956.

468

Altick & McDaniel, Dayton, By Hugh H. Altick, of Counsel, for plaintiff-appellee.

Curtner, Brenton & O'Hara, Dayton, By Clifford R. Curtner, of Counsel, for defendant-appellant.

(CONN and DEEDS, JJ, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By HORNBECK, J:

This is an appeal on questions of law from a judgment entered on a verdict in behalf of plaintiff and against the defendant in the sum of $10,000.00. Defendant appeals.

The following errors are assigned:

1. Errors of the Court in Overruling Motion for Directed Verdict at the Close of the Evidence:

(a) Plaintiff-Appellee failed to sustain the burden of proof as to negligence of Defendant as alleged in the Amended Petition.

(b) Plaintiff failed to sustain the burden of proof that the alleged accident occurred in a common hallway provided for common ingress or egress under the lease.

(c) Plaintiff failed to sustain the burden of proof as to control of the room, of creating a hidden pitfall, or of any notice that one existed.

(d) The evidence established that Plaintiff assumed the risk, proximately resulting in his injury.

(e) The evidence established that plaintiff was guilty of contributory negligence, as a matter of law, directly and proximately resulting in his fall.

2. Errors of the Court at the Conclusion of Plaintiff's and Defendant's Evidence in—

(a) Refusing to strike allegations of negligence from the amended petition.

(b) Overruling demurrer to petition and evidence at the close of plaintiff's case.

(c) Overruling to non-suit on ground of departure, variance and surprise.

(d) Overruling motion to remove specifications of negligence from jury consideration.

(e) Overruling the motions to dismiss for the reason that the evidence established the defendant ABCo Construction Company was primarily liable and had effected settlement with plaintiff.

(f) Overruling motion to remove from the jury the allegation as to injuries.

3. The Court Erred in Permitting the Jury to Speculate on the Inference of Agency by Estoppel.

4. Errors of the Court in the Matter of Amendments of the Pleadings.

5. Errors of the Court in the Admission and Rejection of Evidence Prejudicial to Defendant.

6. Error of the Trial Court in the Giving and Special Instruction No. 1 of Plaintiff and Refusal to Give Defendant's Special Instructions Nos. 3, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15 and 16.

7. Errors of the Court in Its General Charge to the Jury on—

(a) Agency by estoppel and emphasis thereon.

(b) Burden of proof to establish contributory negligence.

(c) An invitee.

(d) Omission to charge on burden with respect to medical proof.

(e) Omission to charge as requested with respect to ingress and egress.

(f) Omitted to charge on terms of the lease with respect to occupancy.

(g) Refused to charge or define obligation of owner as to condition of premises.

(h) Refused to charge that room was not intended for common use of tenants but was for workmen of ABCo.

(i) Refused to submit issue of control of room.

470

(j) Refused to submit issue of notice of defendant.

(k) Refused to instruct the jury with regard to hazards of building construction.

(l) Refused to submit issue of assumption of risk.

(m) Refused to submit charge with respect to agency of ABCo and Sub-contractors.

(n) Refused to charge on sole negligence of ABCo.

(o) Failed to submit issue of primary and secondary negligence.

8. The Court Failed to Define the Issues Raised by the Pleadings and the Evidence.

9. That the Verdict was Excessive and Rendered under Passion and Prejudice.

10. That the Jury was Permitted to Speculate as to the Damage for Injuries not Shown by the Evidence to be Directly and Proximately a Probable Result from the Accident.

11. Errors of the Court in Overruling Defendant's Motion for Judgment Non Obstante Veredicto and for a New Trial and Rendering Judgment for Plaintiff.

The facts essential to an appreciation of the errors assigned are that plaintiff instituted his action for damages for personal injuries against the ABCo Construction Company and The Main-Nottingham Investment Company, which we hereinafter refer to as The Main-Nottingham Company. Subsequently, plaintiff settled his claim against The ABCo Construction Company for the sum of $3,500.00, taking the usual covenants of release and promise not to sue. The ABCo Construction Company was dismissed as a party defendant, and the cause proceeded to trial on the issues drawn between the plaintiff and the defendant-appellant.

Plaintiff's amended petition, upon which he went to trial, averred that appellant was the owner of a commercial building located in the northern part of the City of Dayton and that on and prior to November 9, 1951, the Western and Southern Life Insurance Company, employer of plaintiff, had leased a portion of the building; that on said date plaintiff was in a hall on the main floor of said building which was provided by the owner thereof as a means of ingress and egress for the use of occupants of said building, including plaintiff, that he stepped upon a covering over a hole in the floor of the place where he entered, receiving certain injuries described.

The negligence charged against defendant-appellant was that it maintained a concealed pitfall in said hall, to-wit, the opening in the floor covered, as aforesaid. That it failed to warn plaintiff of the existence of the covered opening, failed to provide a cover which would support the weight of a person walking thereon, and failed to provide the hall with lighting which would render the covered opening visible to plaintiff.

The second amended answer of defendant admits that it was the owner of the property described in the petition under construction on November 9, 1951; that the ABCo Construction Company was the general contractor for the erection and completion of the building.

Denies possession and control of the premises on the date set out in the petition; that it provided the hall as a means of ingress and egress for the use of occupants or the plaintiff; specifically denies the negligence charged against it and generally denies other allegations of the amended petition.

The second defense was a charge of contributory negligence against the plaintiff. The third defense charges assumed risk and the fourth defense avers that The ABCo Construction Company was in complete and exclusive control and management of the room where the plaintiff fell through the floor and that plaintiff had settled with said corporation for his claim against it and that said settlement was complete and adequate compensation and satisfaction of plaintiff's claim.

The reply was a substantial denial of the affirmative defenses of the second amended answer.

Certain facts are either admitted or uncontradicted. Plaintiff was a district manager of The Western and Southern Insurance Company, stationed in Dayton, Ohio, which company had in 1950, prior to the beginning of construction of defendant's building, leased from defendant certain quarters on the second floor, southeast corner of the building which was under construction on and prior to November 9, 1951. Plaintiff, as a representative of his company, visited the site of the new building while it was in process of construction two or three times a week. Prior to November 9, 1951, probably a week before, plaintiff's company had been notified that its leased quarters were ready for occupancy and that it could move on that date. Plaintiff does not testify who gave the notice to his company but Gerald H. Wilks, a witness for the defendant and assistant secretary and director of ABCo and Main-Nottingham Companies, says that he notified plaintiff's company that the building was ready for its occupancy. Certain furniture of plaintiff's company was moved into its space either prior to or on November 9, 1951.

The defendant company, the owner of the building, had engaged The ABCo Construction Company to erect the building and it was not completed on November 9, 1951, although at least one other occupant than Western and Southern had moved or was moving into the building. The ABCo Construction Company and the defendant had the same secretary and director; also the same president, Arthur Beerman, who was on the premises during the time that the building was under construction, and on occasions when plaintiff visited the property. In Ocotber, 1951, Mr. Beerman was taken ill. The ABCo Construction Company had a general superintendent on the site of the building by the name of Feig.

On the afternoon of November 9, 1951, plaintiff entered the building preparatory to unloading certain office supplies from an express truck, then stationed on the west side of the building. There is some testimony to the effect that this truck was first on the east side of the building. There was a main entrance to the building on the west side thereof, but on the day of the accident it was closed. Plaintiff entered the building through a small door to the north, on the west side of the building, moved into a small room about 4-½ x 8-½ feet,

went up to the main hall on the ground floor, then on upstairs to the leased quarters and brought some of his associates back with him over the same route that he followed going up to his company's quarters. These men were preparing to move the supplies and, as one moved into the room with supplies, plaintiff, who was stationed therein, on request, stepped back to make room for the man with the supplies and in doing so, fell through a hole which was about 2-½ feet wide by 3-½ feet long, covered by plasterboard. Plaintiff fell some 9-½ feet into a basement, landing on his back and head, and suffered severe injuries. The plasterboard was of insufficient thickness or structure to hold the weight of plaintiff.

Some facts are in dispute, but upon plaintiff's version are: That he did not at any time know The ABCo Construction Company; that it was the building contractor; the relation of Beerman or Wilks to The ABCo Company; that he first learned of the ABCo Company after his fall. That, knowing Mr. Beerman to be the head of the defendant company from which plaintiff's company had leased its quarters, plaintiff during the time that he was at the building had dealt with Mr. Beerman in the belief that he was in complete charge of construction; that he had introduced Mr. Feig to plaintiff and told him that Feig was the construction superintendent and that another individual at the site of the building, who was known to be Superintendent of Construction before Feig, had instructed plaintiff that if he wanted any information to consult Mr. Feig. It appears that men who were in the employ of ABCo were to do some work for Western and Southern in its quarters—placing of partitions, etc.,—although as we have said, it does not appear that plaintiff knew of any separate relations between ABCo and defendant company.

On the day of the accident, plaintiff had been called by phone at his downtown office and informed that an express truck was at the site of the building with supplies to be unloaded. That he went to the new building, knew the hallway floor was not completed, and was told by Mr. Feig, "We were not permitted to use the arcade floor in any respect that morning." Plaintiff and at least one of his witnesses say that the Terrazzo floor in the hallway was under construction, and men were working on it the day of the accident. This is denied by the contractor who had the job of laying this floor, who says it was completed on the 4th or 5th day of November and was ready for use one day thereafter. A tarpaulin was hung over the front entrance on the east side. Preparatory to an entrance into the building, plaintiff inquired of Mr. Feig, who told him that he should use the entrance through the small door on the west side, and Feig unlocked and opened the door and thereafter placed certain cement blocks just inside the door to make access easier. That the small room into which this door opened was lighted only by the daylight from the open door. That plaintiff had not been into this room before the time Mr. Feig directed him to use it, and did not see the covered hole.

Neither Mr. Beerman, Mr. Feig, nor the individual whom plaintiff identified as Superintendent of Construction prior to Feig was a witness,

and thus the statements and conduct attributed to them by plaintiff were not directly denied.

Defendant asserts and offers supporting testimony that The ABCo Construction Company had the contract to erect and complete the building for defendant; that it was not finished when plaintiff was hurt; that Feig, as Superintendent of Construction, was in the sole employ of ABCo; that access to the building on the day of the accident could have been made from the east entrance; that the tarpaulin hung in front of the door at this entrance was merely placed to keep out the cold, and could have been lifted. There is testimony that on the afternoon of the day when plaintiff was hurt, his company moved some of its effects into its quarters and entered the building from the east. That the way which plaintiff used to reach the rented quarters of his company was not a common way intended for use of occupants of the building; that Feig had no knowledge that the hole through which plaintiff fell had been covered; that there was provision for lighting of the room by a switch to the left of the entrance door. It is testified that the hole in the floor prior to, on the day of, and shortly before plaintiff's accident, as late as 11:30 A. M., had been covered by 2 x 4's or 2 x 6's and 2 x 8's extending from the wall in Wigwam fashion to the floor beyond the hole.

This development in the evidence, if true, leaves unexplained who removed this covering. Mr. Serena, in charge of laying the flooring, after explaining the placing of the lumber over the hole, made this significant statement: "Well, if any body wanted to use that door there, they would have to remove those planks." It appears that the plasterboard covering had been placed over the hole by a Mr. Kinderdine, several days before the accident, as were the planks. He says that "everybody used the small room," evidently meaning all the workmen. When asked if he closed the door to the small room on the day he left after covering the hole, he answered: "No, I don't think we did. I think the door was wired back, because I backed the truck right up to the door." He also says there were men working on the steps of the west landing to the hallway in the arcade.

The five groupings in the first assignment of error are directed to the overruling of defendant's motion for directed verdict at the close of the evidence, for the reason that plaintiff failed to sustain the burden of proof of the averments of his petition; that the accident occurred in a common hallway; failed to sustain the burden of proof as to the control of the room, of creating the hidden pitfall, or of any notice that one existed and that the proof established the plaintiff assumed the risk and was guilty of contributory negligence as a matter of law.

At this juncture, we are satisfied to say that the plaintiff established a case which entitled him to go to the jury, as against any of the foregoing assignments of error. We will discuss these assignments in other aspects later in this opinion.

The second group of errors is directed to: the refusal of the court to strike allegations of negligence from the amended petition; overruling demurrer to the petition and evidence at the close of plaintiff's case; overruling motion to non-suit plaintiff on grounds of departure; vari-

ance and surprise; overruling motion to remove specification of negligence from jury and overruling motion to dismiss for the reason that the evidence established primary liability of ABCo Construction Company and that plaintiff had effected a settlement with that company and in overruling a motion to remove from the jury the allegation as to certain injuries.

The third assignment of error is that the court erred in permitting the jury to speculate on the inference of agency by estoppel.

This is the material and controlling issue. If plaintiff failed upon this issue, all other assignments are inconsequential. The court instructed the jury on the subject of apparent and ostensible authority of an agent, and then said:

"This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority. * * *"

In our judgment this was a sound exposition of the law on the subject and is supported by the cases. The only question presented is whether the facts support the implicit findings in the verdict that the agency of defendant was established.

The Ohio cases on the subject are **Combs v. Kobaker Stores, Inc., d. b. a. The Boston Store, 65 Abs 326,** opinion by Judge Miller of this Court, who cited in support of the judgment **1 O. Jur. 676, Sec. 34; Fields, Inc., v. Evans, 36 Oh Ap 153,** and **Rubbo v. Hughes, 138 Oh St 178.** The principle and its application are considered and discussed in 2 C. J. S., Sec. 1062, 1063, and in 2 American Jurisprudence, Sec. 104, page 86, where it is said:

"The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon same as though it were the authority actually conferred upon the agent. This has been the view of practically all the cases on the point." (Citing many cases.)

Judge Zimmerman in the opinion in **Johnson v. The Wagner Provision Co., 141 Oh St 584,** at **page 590,** says:

"It (agency by estoppel) is usually applied in those cases where credit has been extended, action has been induced, delay has been obtained, or some other change in the position has occurred, in reliance upon the appearance of authority. That doctrine, as it might be invocable by a plaintiff in a tort action, rests upon the theory that one has been led to rely upon the appearance of agency to his detriment. **Rubbo v. Hughes Provision Co., 138 Oh St 178.**"

We hold that the plaintiff developed facts justifying and authorizing the application of the doctrine of agency by estoppel.

It must be assumed that the defendant knew that plaintiff's company might be moving into its quarters on the 9th of November, 1951, which fact would necessitate its entrance into the building and that plaintiff had the right to expect that defendant would provide for such an entrance. When plaintiff learned of the notification to move, without express knowledge to the contrary, he would have reason to believe that it came from the defendant, the landlord of his company. Mr. Beerman was the head of defendant company, as well as of The ABCo Construction Company, which position in the ABCo was unknown to plaintiff. When then, if Beerman, by direction, acts and conduct led plaintiff to believe that Feig was the employee of defendant on the job, it would be estopped to deny the agency as to any acts which would be within the apparent scope of the agent's authority. Accepting plaintiff's testimony, as the jury had the right to do, plaintiff was informed by Feig that neither main entrance was available to him for the purpose of unloading and moving supplies of his company and that the only entrance was that which the plaintiff was directed to use.

It is true the record does not disclose that any other tenant or occupant used, or was directed to use, the small room as a means of entrance into the main portion of defendant's building, and it was not ordinarily to be so used. However, that it was understood by plaintiff and Feig to be the only way to the main part of the building, and therefore a common way on the day and at the time of the accident, may be inferred from what did occur. That plaintiff upon his testimony had full right to enter the building as a tenant of defendant is apparent, and he was an invitee of defendant independent of, as well as by reason of, the direction of Mr. Feig.

The appellant insists that the court erred in failing to charge assumption of risk which, on motion, was withdrawn as a defense. It is basic that this principle arises only if the danger is obvious or when a party against whom it is invoked has knowledge of the danger and then assumes that risk. The doctrine is well stated in many of the cases cited by appellant. **Masters v. N. Y. Central R. Co., 147 Oh St 293, fourth syllabus:**

"A person, who brings about a condition or a situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposure."

In this cited case the plaintiff, a prospective passenger, was attempting to board a moving train and suffered injury. He was an experienced

railroad man with full knowledge equal to that of the train crew of the circumstances relating to the hazard of such boarding. The court held that there was an assumption of risk as a matter of law. Contrast the facts in this case with those in the cited case. There is no variance in the law in the other cases cited by appellant. See also **Dahnke v. Hunt, 55 Oh Ap 44; Flynn v. Sharon Steel Corp., 142 Oh St 145, 163, 164; Pioneer v. Great Atlantic & Pacific Tea Co., 59 Oh Ap 367; Ivory v. Cincinnati Baseball Co., 62 Oh Ap 514; Porter v. T. T. Rd. Co., 152 Oh St 466; Gill v. Arthur, 69 Oh Ap 386; Fay v. Thrasher, 77 Oh Ap 179; S. S. Kresge Co. v. Holland, 158 F. (2d) 495.**

The contributory negligence of the plaintiff was an issue and properly submitted to the jury. The cases which are cited by appellant may be distinguished on the facts. No witness denies the testimony of the plaintiff as to the extent of the visibility in the room in which he was injured. One witness for the defense was interrogated on the subject but his expression that the room would be dark did not include the fact that there was in the room at the time of the accident the daylight from the open door. And failure of plaintiff to use a switch which would have afforded light may have been excused by the jury because of the fact that he did not know of its presence or location.

The late case of **Johnson v. The Citizens National Bank of Norwalk, 152 Oh St 477,** discusses and seems to modify the analyses of the facts in **Flury v. Central Publishing House, 118 Oh St 154,** and **McKinley v. Niederst, 118 Oh St 334,** where plaintiffs, without any precaution, stepped into totally darkened area ways and were injured. The court held in the Johnson case that, notwithstanding the fact that the elevator shaft into which plaintiff stepped was in semi-darkness only, he was chargeable with contributory negligence as a matter of law. This case, and all of the other cases discussed in the Johnson opinion presented facts not found here. The precaution that the plaintiff here was required to exercise in moving into the room with which he was unacquainted must be judged in view of the implied assurance of safety by the invitation and direction of Feig. We have examined the other cases cited: **Leighton v. The Hower Corporation, 149 Oh St 72; Kauffman v. The First Central Trust Company, 151 Oh St 298.** In the Leighton case plaintiff was injured when she fell off a step of which she said she was oblivious, although she had used it a few minutes before her fall. In the Kauffman case, an employer of lessee was injured on a faulty elevator which was in good condition when the building was leased and when installed; landlord was out of possession and control of the premises, there was no agreement to maintain or repair, and landlord was in no way connected with the business or activities being carried on on the premises. Recovery denied.

Appellant asserts that the liability here was primary against ABCo and only secondarily, if at all, against defendant.

The theory of the plaintiff and the support for the verdict is based on the theory of joint liability of ABCo and defendant, and that the settlement with ABCo reduced the amount of liability pro tanto only which the court charged.

Joint liability for tort lies where wrong doers have acted in concert

in the execution of a common purpose, where the want of care of each is of the same character as the want of care of the other. **Stark County Agricultural Society v. Brenner, 122 Oh St 560.** Where two or more persons owe to another a common duty and by common neglect thereof, the other is injured, there is a joint tort with joint and several liability. **Canton Provision Co. v. Gander, 130 Oh St 43,** affirming **17 Abs 329. Davis v. Seasley, 18 Abs 607.**

Following **Davis v. Seasley, 18 Abs 607, page 15, The Globe Indemnity Co. v. Schmidt, 142 Oh St 595,** holds that one constructively liable for a tort and one actually responsible are not joint tort feasors because not in paro delicto although either liable to any injured third person. To like effect. **Larson v. Cleveland Ry. Co., 142 Oh St 20,** cited in the reply brief.

Upon the plaintiff's case it may be said that both ABCo and defendant were exercising some control of defendant's building. Admittedly, Feig was acting for ABCo. The jury could find that he also was acting for the defendant. In this situation no question of primary or secondary liability arises, since all who actively participate in the tort are joint tort feasors. **Maryland Casualty Co. v. Frederick Company, 142 Oh St 603, 3 Syl.** Appellant cites the early, leading case of **Burdick v. Cheadle, 26 Oh St 393, 7, 8.** Plaintiff was a customer of Mattison, who was a sub-lessee of Hunt, lessee of defendant, Cheadle. Plaintiff was injured by falling shelves which had been improperly constructed by Cheadle. Court held that plaintiff must look to Mattison for his damage and pointed out that "The general rule is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them." In the instant case, the jury had the right to find that the defendant, as well as ABCo, invited plaintiff into the small room.

In **Ripple v. The Mahoning National Bank, 143 Oh St 614,** the landlord who was sued retained no control over room, a private office, in which plastering fell, injuring plaintiff. Same holding. **Goodall v. Deters, 121 Oh St 432. Bello v. Cleveland, 106 Oh St 94,** holds that abutting owner who solely created dangerous condition in a highway is primarily liable to injured plaintiff. Settlement with owner releases city which was secondarily liable.

It is urged that there is variance between the averments of the amended petition and the proof. That it is not assigned as negligence that defendant's agent directed or invited plaintiff to enter the small room. This is true, but the testimony was competent and probative of the negligence which was charged. The following cases cited by appellant to establish variance, in our opinion do not support its contention. In **Megrue et al, v. Lennox, 59 Oh St 479,** the negligence charged was a failure to maintain a fence sufficient to turn stock. Evidence showed only that stock entered through an open gate. In **Eureka Fire and Marine Ins. Co., et al v. Baldwin, 62 Oh St 368,** it is held that proof of waiver of conditions of the contract not pleaded does not establish performance of all conditions of the contract. Other cases cited, **Hisinger et al v. Trickett, 86 Oh St 286; Palmer v. Humiston, 87 Oh St 401,** do not present facts germane to our question.

Assignment No. 5 directed to the admission and rejection of the evidence is in our judgment without merit. The experienced trial judge carefully and properly controlled the admission and rejection of the evidence and in the rulings no prejudice resulted to the defendant.

Assignment No. 6 refers to the giving of plaintiff's special instruction No. 1 and refusing to give defendant's special instructions Nos. 3, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15 and 16. Plaintiff's special charge No. 1 related to the law of agency by estoppel, and was sound.

Defendant's special charge No. 3 is too restrictive. No. 4 instructed the jury, without qualification, that if on the date of the accident it found that defendant provided a usable and passable hallway from the east entrance of the arcade to the center hallway and to the elevator and upstairs portion, for the use of The Western and Southern Life Insurance Company, and its employees, it should find for the defendant. This charge fails to give consideration to the effect of the statement of Feig that the only entrance to the building was through the room in which plaintiff was injured. It may have been a fact that the east entrance and hallway to the stairs could have been used, but if plaintiff believed and had good reason to believe that it could not be so used, by reason of the statement of Feig, plaintiff would not be bound by the actual situation.

No. 5 is incorrect in that it excludes a right of the jury to find that plaintiff had the right to believe, until in the exercise of ordinary care he knew otherwise, that there would be a safe floor in the room which he says he was directed to enter.

No. 6 was not responsive to the factual development.

No. 7 is highly improper because it would require a finding for the defendant if the jury found that the room in which plaintiff was injured, or area way, had not been completed or that any part of the building had not been turned over to the defendant.

No. 8 is too general in that it includes "existence of other conditions, as alleged in the petition."

No. 9 also is too general, as is No. 10.

No. 11 is not a sound proposition of law applicable to the facts developed. No. 12 permits a finding for the defendant if the jury found that the place where the plaintiff fell was "in a dangerous condition."

Request No. 14 precludes a finding for the plaintiff on the doctrine of agency by estoppel, as does No. 15.

No. 16 is based on the principle of primary and secondary liability

Assignment of error No. 7 questions the correctness of the general charge with special reference to agency by estoppel, burden of proof on the issue of contributory negligence, refusal to submit the issue of assumption of risk, to charge on the sole negligence of ABCo, to submit the issue of primary and secondary liability. We have discussed all, or nearly all of these propositions heretofore. It is not the obligation of the trial judge to charge on the negative aspects of proof and at length on situations which, if found, would absolve the defendant from liability. Such procedure would encumber the record unnecessarily and be of no assistance to the jury in deciding material and determinative issues. The trial judge properly charged the jury as to the essentials

of proof to be made by the plaintiff to entitle him to a verdict; nothing less will support the verdict. There are several more sub-headings to this assignment, as to which we hold against the appellant without comment, as we do on Assignment No. 8, Failure to define the issues; 9, Verdict was excessive and rendered under passion and prejudice; 10, Jury permitted to speculate as to damages for injuries not shown by the evidence to be directly and proximately a probable result from the accident; and 11, Errors in overruling defendant's motion for judgment non obstante veredicto, and for new trial and rendering judgment for plaintiff.

We have given careful consideration to the numerous errors assigned and discussed most of them. It is evident that appellant protected its record at every stage of the trial. The trial judge was considerate, patient and well grounded on the law of the case. Defendant's rights were fully protected. We find no error assigned well made.

The judgment will be affirmed.

CONN and DEEDS, JJ, concur.

No. 2362.   Decided June 26, 1956.

## OPINION

By THE COURT:

Submitted on application for rehearing. Although our rules now make no provision for such an application, we consider briefly the several causes set up.

Failure to fully consider:

I. Assignment of error No. 2 and assignment of error No. 7-j, refusal of the trial judge to give Special Instruction No. 8 relating to notice.

On page 12 of the opinion, we state that we are considering the five groupings in the first assignment of error, one of which was "**or of any notice that one existed** and that the proof established the plaintiff assumed the risk and was guilty of contributory negligence as a matter of law." (Emphasis ours.)

On page 13, we held that these assignments were not well made as against the right of the plaintiff to have his case submitted to the jury. It is true that we did not specifically discuss the question of the requisites of notice to the defendant, but we did hold generally near the end of the opinion that no error assigned was well made. We specifically held that defendant's special instruction No. 8 relating to notice was properly refused. These holdings are sufficient to support a judgment entry, if desired, finding that the assignments relating to the failure of the court to charge further on the subject of notice to the defendant of the presence of the covered hole are not supported.

The application for re-hearing continues:

"This Court finds, on page 11 of the decision, that Mr. Feig had no knowledge of the hole through which the plaintiff fell, had been covered; and—'as late as 11.30 a. m., had been covered by 2 x 2's, or 2 x 6's and 2 x 8's extending from wall to wall in wigwam fashion to the floor beyond the hole.'"

This conclusion of appellant is not exact. That part quoted is but a recitation of the claim of defendant and of supporting testimony offered by it.

Appellant again presses the failure of the evidence to establish joint control on the part of Main-Nottingham and ABCo. This proposition was considered at length, and we expressed our views respecting it.

II. Counsel calls attention to our statement that Mr. Beerman had introduced Mr. Feig to plaintiff. Appellant is correct in this contention, and we were in error in the statement. However, in the light of all of the evidence on the subject, the variance is not such as to affect the right of the plaintiff to have the question of agency by estoppel determined by the jury.

Appellant excepts to our characterizing the west entrance to the Main-Nottingham building as a main entrance, and urges that the main entrance was on the east side. We had no misapprehension respecting the entrances to the east and west and which was the principal entrance. Both were intended eventually to afford entrances by tenants and the public to the building.

Appellant on page 6 states:

"The Court on page 10 has said that Mr. Feig 'unlocked and opened the door and thereafter placed certain cement blocks just inside the door to make access easier.'"

This seems to us to be a hyper-critical criticism of the language employed. The record on the subject is as follows:

Q. to plaintiff: "Then what was done after the door was open?"

A. "Right under the door, there was about a 2 foot step and I called it to his (Feig's) attention and he had a fellow who was working on the project place two or three cement blocks there for him to step on."

"Qui facit per alium facit per se." Manifestly, the fact that Feig instructed a workman to place the blocks instead of placing them himself makes no difference whatever in the effect of the testimony.

III. Appellant urges that we did not give application to the case of **Gedra v. Dallmer, 153 Oh St 258**, in our holding that the plaintiff made a case for the jury as to the joint liability of Main-Nottingham. We expressed our view of the law on the subject.

We gave full, careful and lengthy consideration to the manifold assignments of error and the voluminous briefs of appellant in our original opinion, and find no substantial reason for the granting of the application for rehearing. It will be denied.

HORNBECK, CONN and DEEDS, JJ, concur.