JEREB, Admx., Plaintiff-Appellee, v. RISS & COMPANY, INC., a Corporation, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24183.  Decided March 13, 1958.

A. H. Dudnik, Warren M. Briggs, for plaintiff-appellee.

McConnell, Blackmore, Cory, Burke & Kundtz, for defendant-appellant.

(HORNBECK, J, of the Second District, sitting in place of HURD, J.)

## OPINION

By HORNBECK, J.

This is an appeal from orders of the trial judge in refusing to sustain motions of defendant to direct a verdict or enter judgment in its behalf at the end of the plaintiff's case and at the end of all of the evidence and to sustain defendant's motion for judgment notwithstanding that the jury failed to reach a verdict.

Plaintiff's action was for damages for the wrongful death of her decedent claimed to have been caused by the negligence of the defendant. Four specifications of negligence were alleged; three were submitted to the jury. The jury reported that it could not agree and was discharged.

Five errors are assigned which we will state as we discuss them.

At the outset, we note that there is dispute in the record on every material issue in this case. In deciding the assignments, we consider the evidence in its most favorable light to the plaintiff.

The first assignment of error is: There was no proof that Riss was negligent.

Was there an issue as to the negligence of the defendant. Edward Ryan testified for the plaintiff. He was a guard for the Cleveland Cap Screw which occupied a building located immediately across the street to the north and east of the place on the street where plaintiff's decedent was struck. On the night of November 27, 1952, Thankksgiving, he was on the ground floor of the west end of the building in which he

worked. He says that there was a barricade extending into and along the street; that decedent was walking around it, about one foot from the curb; that he had proceeded from 15 to 20 feet to the east when he was struck; that when he stepped off the curb, two cars were approaching from the west at a distance of 300 feet; that when these cars were first seen, one was back of the other; that they were moving very fast and seemed to be racing. When they had reached a distance of about 100 feet from decedent, the car to the rear passed the car ahead on its right, swerved to the right and to the curb, struck plaintiff's decedent, whose body went up to the windshield, was thrown about 100 feet into' a field and was killed almost instantly.

It is undisputed that in October and November of 1952, the defendant, a transport company, was a lessee of one-half of the premises at 17800 St. Clair Avenue, Cleveland, Ohio. The lessor was the Transport Manufacturing & Equipment Company, a non-resident owner of the property. There were other transport companies leasing the other half and operating their businesses on the property. The building on the property was about 1000 feet from St. Clair Avenue and in front of it was a large parking space. Because of a faulty condition of a west driveway from the street into the premises and a part of the parking space, it was determined that it should be replaced. Incident to this work, it became necessary to tear up the apron and sidewalk in front of the premises and it also had to be replaced. The condition of the sidewalk before its replacement does not definitely appear. The contract for the job was, according to the testimony of defendant, let to an independent contractor by the owner, Transport Manufacturing & Equipment Company, and paid for by it prior to the death of plaintiff's decedent.

After work was begun on the job, application was made to the City of Cleveland, Department of Public Service, for a permit to lay the sidewalk. Of course, no permit was required as to the laying of the driveway on the premises proper. This application for a permit was made and signed by "H. F. White, Term. Mgr." (meaning terminal manager), for defendant company. The permit was issued authorizing **"Rise and Company to lay concrete sidewalk or driveway on 17800 St. Clair Avenue * * * owned by same,"** the amount of the work to be 250 square feet. (Emphasis ours.) At the end of this permit and as a part thereof, was this language:

"The undersigned hereby agrees to all conditions of this permit as above stated, and to provisions on reverse side of this permit."

\* \* \*

"The city to be held harmless for all damage to person or property, and from all costs that may, in any manner, or at any time arise through the granting of this permit, or in the performance of any work done under the same."

Ryan said that a barricade 20 to 25 feet long was placed in front of the driveway of the premises into the terminal and another on both sides of the sidewalk 6 to 8 feet long extending about one foot beyond the curb and into the street.

The claim of the plaintiff is that the "defendant managed, con-

trolled and operated the premises" in front of which the barricade was placed and was obligated to replace the sidewalk and in so doing caused a dangerous condition to obtain in the three particulars asserted in the petition.

The barricade, as erected, required pedestrians, when they came up to it from the west moving east, either to go around to the south end over the property of the defendant, or to walk around the barricade to the north and into the street. The nearest cross-walk to the west was about one-half mile away. There was testimony that the way around and over the property to the south of the sidewalk was difficult to traverse because of deep ruts and mud. Thus, pedestrians had to make a choice as to their route around the barricades.

It cannot be said, as a matter of law, that the decedent did not have the right to walk in front of the barricade where he was killed which would take him into the street. Nor, can it be said, as a matter of law, that there was no issue for the jury whether the barricade, as constructed, created a dangerous condition for pedestrians having to pass around it. If the defendant was in possession and control of the premises and under legal obligation to construct the sidewalk, and in so doing an independent contractor was employed to lay this sidewalk and in placing the barricades requiring pedestrians to walk into the street created a dangerous condition, defendant would not be absolved, as a matter of law, from all liability for that condition.

**Warden v. Penna. Rd. Co., 123 Oh St 304, 175 N. E. 207:**

"1. Where a person employs a contractor upon construction in a place where the public may lawfully pass which work requires precautions to be taken to safeguard the public against danger, such person owes a duty to see that reasonable precautions are taken, and becomes liable jointly with the contractor for the failure of the latter to exercise due care.

"2. Whether danger to the public is likely to attend the doing of the work is a question of fact to be submitted to the jury under proper instructions."

To like effect, **Richman Brothers Company v. Miller, 131 Oh St 424, 3 N. E. 2d 360:**

"3. The duty to refrain from interfering with the right of the public to safe and unimpeded use of highways and street is one of which an employer cannot divest himself by committing the work to a contractor."

The second assignment of error is that "Plaintiff failed to rebut inferences that decedent was guilty of contributory negligence or assumption of risk."

Assumption of risk is not in this case. **Logsdon v. Main-Nottingham Investment Company, 103 Oh Ap 233,** 141 N. E. 2d 216, and cases there cited.

An inference of contributory negligence of plaintiff's decedent may be found from the testimony of defendant's witness, Krauter, or from the fact that plaintiff's decedent could have taken another route around the sidewalk. But these inferences were not conclusive and may or may not have been accepted by the jury.

Clearly, there was a factual issue as to the contributory negligence

of plaintiff's decedent. Upon plaintiff's testimony, which the jury had the right to accept, decedent had the right to move into the street to pass the barricade. The record being silent as to his looking toward on-coming traffic, there was a presumption that he did look before entering the street. The cars approaching were 300 feet away when decedent entered the street, a distance which may have justified his belief either that he would have time to clear the barricade before they would reach him, or, that they would not enter his path which was but approximately a foot into the street. Decedent could very properly assume that the car which struck him would not pass the other car to its right and swerve into and strike him. The contributory negligence of decedent was an issue for the determination of the jury.

The third and fourth assignments may be considered together. The third is:

Plaintiff failed to prove by a preponderance of evidence that Riss' negligence, if any, was a proximate cause of the accident and death of decedent.

The fourth is:

The proximate cause of the death of the decedent was the acts of James T. Botamer, whose acts were an intervening cause making Riss' negligence, if any, remote and Botamer's proximate.

If it be found that the barricade, as erected, created a dangerous condition in the street for which defendant may be held liable, it may be determined that this negligence combined with the negligence of the driver of the automobile and contributed as a proximate cause to the death of decedent.

In the cases cited by defendant, **Hrovat v. Cleveland Ry. Co., 125 Oh St 67**, 180 N. E. 549, the court found that the negligence of one of the defendants was remote and the intervening negligence of the other defendant was the sole or proximate cause of plaintiff's injury. In **Thrash v. U-Drive-It Co., 158 Oh St 465**, 110 N. E. 2d 419, there was a break in the chain of causation. **Gedra v. Dallmer Co., 153 Oh St 258**, 91 N. E. 2d 256, presented facts where the injury may have been as reasonably attributed to an act for which the defendant was not liable as to the one for which he was liable. 3rd Syllabus.

The fifth assignment, in our opinion, presents the only serious question on this record. It is, that:

The uncontroverted evidence discloses that the construction work was not done for and on behalf of Riss and therefore plaintiff has sued the wrong party.

The plaintiff made a case in chief for the jury. To overcome this case, it was necessary that the defendant produce testimony which so conclusively controverted the effect of plaintiff's evidence as to require the conclusion that reasonable minds could not differ. **Hamden Lodge v. Ohio Fuel Gas Co., 127 Oh St 469**, 189 N. E. 246; **J. C. Penny Co. v. Robison, 128 Oh St 630, 631**, 193 N. E. 403.

We are not unmindful that the jury might well conclude that the owner of the premises was solely responsible for the contract and the work done under it at the place where plaintiff's decedent was killed.

A careful reading of the record is convincing that there is factual basis for the claim of plaintiff that defendant was obligated to lay the sidewalk. We say this, in part, because of the uncertainty of the exact status of defendant and its lessor and their respective obligations relative to the construction of the sidewalk which uncertainty nothing short of a reading of much of the record will disclose.

The service performed by the independent contractor included work on the private property of the owner and on the sidewalk in front of this property. It could be found that the defendant was in possession, control and management of the leased premises and that its agent did participate in overseeing the work on the sidewalk as it progressed. If that be so, the defendant was as responsible as the owner for the existence during construction of any condition dangerous to the public, and liable in damages to a pedestrian who sustains an injury proximately caused by such condition.

By the lease with the owner, the defendant was obligated to keep the leased premises in good repair; that would include the sidewalk. The lease provided in part: "On or before November 1st, all cracks and fissures shall be inspected, and if repairs found necessary, a competent contractor shall be employed to make the necessary repairs to all macadam driveways and parking areas to withstand use of transport trucks and equipment. The expense of said repairs to be paid by the lessee," and under "Care of Premises" lessee shall keep the leased premises in good repair, free from filth, danger of fire or any nuisance.

It is held in **Taylor, Sr. v. Standard Oil Company, et al., 71 Abs 77, 78, 130 N. E. 2d 394**, that "the terms 'keep in repair' and 'maintain' are synonymous." The obligation of the defendant under the terms of the lease as to the meaning of "repairs" must be determined from all the circumstances developed in the evidence and by the construction which the parties thereto put upon the term. The lease also further provided that the owner was not "in any event to be responsible for loss or damage of property, or for damage to persons or property occurring in or about the leased premises, unless through the intentional and wilful fault of the lessor." The defendant was fully cognizant of this provision of the lease when it, by its manager, applied for the permit to lay the sidewalk.

Mr. Moody, of defendant company, admits he was responsible for answers to interrogatories propounded by the plaintiff succeeding the filing of her petition in January, 1954, more than three months prior to the trial of the cause Thirteen interrogatories were submitted, several of which were answered. Among them are:

"Q. State whether work was performed by the defendant corporation on or before November 27, 1952, on the sidewalk described in plaintiff's petition."

"A. No."

This answer may have been made upon the theory that the work on the sidewalk was done by the independent contractor and not by the defendant.

"Q. State whether said work was performed by some party other than defendant. If so, state the full name and adress of such party."

"A. No."

This answer is consistent with the fact that the defendant did this work and inconsistent with the claim that the owner of the premises performed the work. Nor does the answer name anyone other than the defendant as having performed the work although the question called for such an answer.

"Q. State whether said work was performed at the request of the defendant."

"A. No."

"Q. State whether said work was performed on behalf of the defendant."

"A. No."

These answers, although specific, are at variance with the answer to the second interrogatory.

The permit to lay the sidewalk was applied for and secured by the agent and manager for the defendant company. The title, "Terminal Manager," without further explanation, imports management over and beyond that which would be associated with possession and occupancy of one-half only of the rented premises. It is clear that in applying for the permit the Terminal Manager acted within the apparent scope of his authority. Mr. White, as a witness for the defendant, without objection, defines his duties as embracing "the supervision of operations, personnel, sales, property maintenance, rental—well, anything that was connected with the business, it was my responsibility to see that that was taken care of." By the terms of the permit, the defendant company represented that it was the owner of the premises in front of which the sidewalk was to be laid and agreed to indemnify the city against any loss incident to the laying of the sidewalk. The issuance of this permit in connection with and in the light of all the facts developed permits an inference that the defendant, if not actually responsible for the laying of this sidewalk, is estopped to deny that it was responsible and presents a jury question.

We find no assignment of error well made and hold that the trial judge did not err in overruling defendant's motions.

The orders will be affirmed.

KOVACHY, J, concurs.

SKEEL, J, dissents.

### DISSENTING OPINION

By SKEEL, PJ.

I am unable to agree with the conclusions of the majority of this court sustaining the overruling of the motion of the defendant-appellant for judgment presented to the trial court after the jury had been discharged for the reason that it could not agree upon a verdict.

The facts surrounding the death of plaintiff's decedent, as portrayed by the evidence, are in irreconcilable dispute. It is the plaintiff's claim that the defendant, through an independent cement contractor, barricaded the sidewalk in front of defendant's leased premises while constructing anew or repairing the then existing west driveway of its

leased property without providing a safe means by which pedestrians could pass around the obstruction and that the deceased in the night season, in attempting to proceed east on the roadway around the barricade, was struck and killed by a passing automobile. The plaintiff's evidence tends to establish that when the deceased stepped into the street to circumvent the barricade, the automobile that struck him was at least 300 feet to the west, following another automobile and that after the deceased had walked about 15 feet along the curb and in the street, the said automobile, in attempting to pass the motor vehicle ahead, swung to the right or toward the south curb of St. Clair Avenue at the point where the deceased was then walking in front of the barricade, striking him and causing his death.

The only evidence introduced by the plaintiff was that the independent contractor who barricaded the public sidewalk without attempting to provide for the safety of pedestrians was employed by the defendant, and that a permit, issued by the City of Cleveland to lay a concrete sidewalk and drive in front of the defendant's leased premises, was issued to Riss & Company, the application being made by defendant's terminal manager. The plaintiff did not introduce a syllable of evidence that the defendant's manager was authorized to take the permit out in the name of his employer.

The defendant's evidence as to the facts occurring at the time of the death of the deceased (November 27, 1952) tended to establish that the barricade which plaintiff claims required the deceased to walk in the street had been removed, and that the place where the deceased was hit was considerably to the east of the west driveway and at a point adjacent to a telephone pole, that the deceased stepped into the street from behind the telephone pole and was almost instantly hit by the automobile above-described just as its driver was attempting to pass to the right of the vehicle ahead.

There is, however, no conflict in the evidence as to the following:

The terminal property, known as 17800 St. Clair Avenue, was owned by The Transport Manufacturing and Equipment Company of Kansas City, Missouri. It had constructed the building and the parking facilities between the building and the public highway, the terminal being about 1,000 feet south of St. Clair Avenue, which improvements were completed about July, 1951. That one-half of the terminal facilities were leased to Riss & Company, Inc. and the rest to about eight other transportation companies. The lease between this defendant and The Transport Manufacturing and Equipment Company required the lessee, among other things, to be responsible for maintaining the parking area and when repairs were found necessary upon a semi-annual inspection, a competent contractor was to be employed to make all necessary repairs to withstand use of transport trucks, the expense of such repairs to be paid by the lessee.

There is further no contradiction of the fact that in the summer or fall of 1952, because of faulty drainage in the original installation of the parking area, the surface started to disintegrate and The Transport Manufacturing and Equipment Company, to replace the work "not properly constructed," entered into a contract with an independent

contractor for the "reconstruction of the entire pavement and driveway area." It is also an undisputed fact that the transport company paid the cost of such work and was not reimbursed therefor nor was reimbursement requested of the Riss & Company, Inc., under the terms of the lease because it was regarded by both companies as "original construction." The construction of the west concrete driveway apron was included in the contract between the transport company and the construction company as original work and paid for by the transportation company. It is also an undisputed fact that the barricades, whether negligently constructed or otherwise, were constructed, maintained and removed by the independent contractor in furtherance of the contract with the transport company. The work as above described was completed by the contractor and paid for by the transport company before the date of the accident described in plaintiff's petition.

From these undisputed facts, it is clear that the property in front of which plaintiff's decedent met with a fatal accident was that of The Transport Manufacturing and Equipment Company, a corporation organized under the laws of the State of Illinois. As the owner of the property it contracted with an independent contractor to resurface its parking lot to replace originally defective construction and to construct the west driveway or apron into the street and that the owner paid the contractor the contract price for such work. There is no dispute but that the contractor, in carrying out the obligations of his contract, erected the barricades. There is no evidence that the defendant's terminal manager, who filed application for and procured a sidewalk permit from the City of Cleveland for the construction of the westerly entrance, was authorized to secure such permit in the name of the defendant. The fact is that on the date the permit was issued, the work, including the driveway, was already in progress under the contract of the contractor with the owner.

With these facts clearly established without dispute, the defendant could not be and was not in any way designated as an agent for the owner or legally responsible for the manner in which its lessor or the lessor-owner's contractor accomplished the work, the alleged negligent performance of which plaintiff claims as a contributing factor in causing the death of the deceased.

The work here being done (replacing defective construction of the parking area originally built only one year before) was not the obligation of the lessee under the terms of the lease. This was the interpretation placed upon the lease by the parties as indicated by their conduct at the time the reconstruction of the parking area was contracted for, which in point of time was prior to the accident. It is likewise true that the lessor was permitted to enter the leased premises to do all necessary work to prevent further deterioration of the parking area and to construct or reconstruct the west driveway. Permission was, therefore, granted for the doing of work which was not controlled or provided for by the provisions of the lease. It should also be remembered that the area in question was for the common use of all lessees of the terminal.

The defendant, not being a party to the contract, and being without

power to direct or control either the conduct of its léssor or the lessor's independent contractor, the theory of law that where public danger is created by the acts of an independent contractor may be visited on the one who procured the work to be done, cannot be asserted against one who is only a lessee of the owner and a stranger to the contract.

The motion for judgment should have been granted.