Plotner, Appellee, *v*. The Great Atlantic & Pacific Tea Co., Appellant.

(Decided February 14, 1938.)

*Mr. Stephen Nicholas* and *Mr. Chester A. Meck,* for appellee.

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellant.

Lloyd, J.  The Great Atlantic & Pacific Tea Company appeals to this court from a judgment of $4,800 rendered against it in the Court of Common Pleas for injuries to the person of Edith Plotner, alleged to have been sustained by her as the proximate result of its negligence.  The major errors assigned by appellant for reversal of the judgment are the refusal of the trial court in the first instance to direct a verdict in its favor and the refusal, after the return of the verdict, to grant its motion for a judgment notwithstanding the verdict.

On June 4, 1936, the date of the injuries to Mrs. Plotner, and for a number of years theretofore, the appellant operated one of its stores in a building located at 131st street in Toledo.  In front of the build-

ing, as a part of the premises on which it was located, was a concrete pavement or areaway of the approximate dimensions of 32 by 25 feet. To enter or leave the store it was necessary for customers to pass over this part of the premises, there being no other way of approach thereto provided for them. For a long time, this concrete space had been used by customers, with the consent and knowledge of appellant, as a parking place for automobiles.

Mrs. Plotner had traded at the store of appellant for seven or eight years and on the occasion in question had gone there in her automobile accompanied by her daughter, to buy groceries. She parked the automobile partially upon the concrete areaway, and went into the store. In a few minutes she came from the store with a paper sack of groceries, which she held on her left arm, and on her way to the automobile stepped on an oil or grease spot on the pavement which she had not seen.

One of the witnesses said that the spot looked like "black oil dropped from a car." Others said it was covered with dust and was brown in color. In any event, after the happening it had the appearance of a shoe heel having slid through it. Mrs. Plotner says that as she walked from the store toward her automobile she looked down at the pavement and saw several spots thereon but did not notice the particular one upon which she stepped and slipped. She said, "You can see them any place you want to look there." She saw them when she went into the store, "very dirty, brownish-looking spots * * * there is little ones and long ones."

For seven years she had crossed this areaway at least every other day in going to and from the store. She knew that automobiles parked there and that there were stains, spots and discolorations where oil had dripped from parked cars' and always "there were

many spots all over." On the day in question, when she went into the store, she saw spots, discolorations and oil stains on the pavement. Some of them, she says, "were large and some smaller than others, and there were wet spots and some were dry, where they had laid and dried. * * * There were lots of them. Was so close together that you could not help but walk over them when you went in there * * * some of them looked dry, dusty-looking where they laid, and then some looked darker than others." Another witness stated that the spot of oil or grease on which Mrs. Plotner stepped "was thicker than ordinary, the dust had blown over it. It was grimy looking, I couldn't tell how long it had been there." The cement pavement was "dirty looking"; it always looked like the cement floor in a garage. This witness also said that the areaway was washed every morning with a hose. The manager of the store testified that every morning it was cleaned with a hose with high pressure water, and the water swept off afterward and that it was scrubbed once a week with soap and water.

After the accident he, with another employee, examined the pavement and the spot where Mrs. Plotner had fallen. He said it looked like "black oil dropped from a car"; that "it wasn't settled in the sidewalk, it was running" and "was still spreading." He thought it looked as though it had been there for 45 minutes or an hour and was three or four inches across. The weather was dry and hot and other than this spot, which was five or six feet from the front of the store, the pavement was generally dry.

The foregoing are substantially the facts in evidence. They show clearly that Mrs. Plotner was aware that the concrete pavement or areaway in front of the store was, and for a long time had been, used as a parking space for customers of the appellant and that it was discolored and stained by oil which had dripped

from parked automobiles. That it was washed and swept daily by employees of appellant is not contradicted. The appellee herself had used it many times for parking purposes, and well knew the probable and incidental condition resulting from the parking of automobiles thereon.

Paraphrasing what is said in *S. S. Kresge Co.* v. *Fader,* 116 Ohio St., 718, 158 N. E., 174, it was not the duty of appellant to keep a large force of scrubbers to remove immediately therefrom oil dropping from automobiles parked in the space in front of its store.

The appellant was not required continuously to place a guard or employees to warn parking customers of that which was as plainly visible to the one as to the other. In the instant case the evidence warrants the conclusion that Mrs. Plotner assumed the risk of the plainly evident condition of which she complains. It was broad daylight and, according to her own story, she knew the recurring condition of the parking space from oil which fell from the cars continually parked there. How long the particular oil spot had existed no one knows, nor from what automobile it fell; but this much is known, the oil was not there by any act of appellant and the parking space had been washed and scrubbed in the morning of the day that Mrs. Plotner was injured at 5:30 in the afternoon.

The impelled conclusion of this court is that the trial court should have directed the return of a verdict in favor of appellant, or, having failed to do so, should have granted its motion for judgment notwithstanding the verdict. Accordingly, the judgment of the Court of Common Pleas is reversed and final judgment rendered for appellant.

*Judgment reversed and final judgment for appellant.*

CARPENTER and OVERMYER, JJ., concur.