**SPAULDING v. PARRY NAV. CO., Inc., et al.**

No. 64, Docket 21768.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1950.

Decided Feb. 9, 1951.

See also D.C., 10 F.R.D. 290, and 90 F. Supp. 564.

Irving L. Evans, Benjamin B. Sterling, New York City, for Parry Nav. Co., Inc.

John J. Kirwan, New York City (Leo F. Hanan and Martin J. McHugh, New York City, of counsel), for Todd Shipyards Corp.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether a shipowner against which a seaman employed on the vessel has recovered a judgment under the Jones Act, 46 U.S.C. A. § 688, is entitled to either indemnity or contribution from a third party defendant

under the facts appearing at the trial. The shipowner, Parry Navigation Company, Inc. will hereafter be referred to as Parry and the third party defendant, Todd Shipyards Corporation, as Todd. The case was tried to a jury which returned a general verdict for $45,000 in favor of Spaulding, the plaintiff, and a special verdict with respect to Parry's third party complaint against Todd. Both Parry and Todd moved for judgment on the special verdict. In an opinion reported in 90 F.Supp. 564, the court denied Parry any recovery; but later, upon a motion by Parry under Rule 59 (b)[1] asserting for the first time a claim for contribution, a second opinion, reported in 90 F.Supp. 567, was written, in accordance with which the judgment was modified to allow Parry contribution from Todd in the amount of $22,500. Both parties have appealed, Parry claiming that full indemnity should have been awarded and Todd asserting error in allowing any recovery.[2]

A brief statement of the facts is desirable before discussion of the legal questions presented by the appeal. Spaulding was a member of the crew of Parry's vessel. On August 14, 1947 he sustained injuries when he fell from a ladder which he was descending from the ship to the dock where the vessel was moored. The vessel had been in Todd's drydock the previous day; on the morning of August 14th she was towed to Pier 16, Hoboken, New Jersey, where Todd was to perform additional work on her. The ship's crew was still on board. The jury's special verdict found the following facts: (1) Todd provided and paid for the berth at Pier 16. (2) It was the general practice at the Port of New York in August 1947 for ship repair companies to provide a ladder or gangway for the ship's crew to board and leave a vessel at a berth provided by the ship repair company. (3) The ladder from which Spaulding fell was placed by Todd against the ship, and Todd was in control of the ladder at the time of the accident. (4) The ladder was improperly secured to the ship by failing to lash it at the ship's railing, so that a reasonably pru-

dent person should have foreseen that someone using the ladder would be injured. (5) The failure properly to secure the ladder caused or contributed to Spaulding's injuries. (6) An officer of the ship knew of the faulty failure to secure the ladder and failed to correct the condition before the accident. (7) It was the duty of both Todd and seamen in the deck department of the ship to see to it that the ladder was properly secured or lashed. (8) A seaman named Moyer was negligent in descending the ladder while Spaulding was still descending and Moyer's negligence contributed to the injury to Spaulding. (9) Spaulding was not negligent in the manner in which he descended the ladder.

Parry claims indemnity from Todd on the theory that, although they were both liable to Spaulding as joint tortfeasors, Todd was the "primary wrongdoer" and guilty of "active negligence" in supplying an improperly secured ladder, while Parry's failure to correct the condition was only "passive negligence." A similar contention was very recently considered by us in Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134. We there said that even on the assumption that the law of New Jersey may recognize that, when two persons are both liable for a tort, the difference in the gravity of their faults may be sufficient to justify putting the whole loss on one, such a result is not rationally possible if only one of the two is liable to the injured person.

The first question for determination is whether the special verdict establishes that Todd was liable to Spaulding. This will be first considered on the assumption that their legal relations are governed by the law of New Jersey. The finding listed above as number (7) states that it was the duty of both Todd and seamen in the deck department of the ship to see that the ladder was properly secured or lashed. This is not a finding of fact but a legal conclusion. Hence it is not binding upon us. Upon the undisputed facts of record we do not think Todd's liability to Spaulding was

1. Fed.Rules Civ.Proc., 28 U.S.C.A.

2. Neither appeal questions the judgment obtained by Spaulding. Parry has paid it in full.

proven. Spaulding was not in Todd's employ. Todd's duty to him arose either because Todd was in possession of the dock which the ship's seamen were privileged to use as "invitees," or because Todd had supplied a chattel (the ladder) known to be dangerous for the intended use.[3] The duty which the possessor of premises owes to business visitors or "invitees" is to use reasonable care to make the premises reasonably safe or else give warning of the danger. If the business visitor is aware of the dangerous condition and realizes the risk involved therein, he may not hold the possessor liable for injuries sustained by reason of the dangerous condition.[4] Spaulding had knowledge of the danger. He testified explicitly that he knew the ladder was not lashed; he had used it earlier in the day and on his final descent it "was in the same shape as it was before." Witness Mulvey, who preceded Spaulding down the ladder, testified that he explained to Spaulding that the condition of the ladder made it unsafe for a second man to start down the ladder before the first had reached the dock. Spaulding agreed that Mulvey had so warned him and believed that Moyer, whose disregard of the warning contributed to Spaulding's fall, had also heard it. It is true that the question of Spaulding's knowledge of the unsecured condition of the ladder was not submitted to the jury but there was no contradiction of the evidence above mentioned, and no finding contrary to it could be sustained. On this record Spaulding's knowledge of the condition of the ladder must be accepted as an additional fact. This fact would preclude any recovery by Spaulding against Todd as possessor of the dock.

■ If the situation be viewed as one in which Todd supplied a dangerous chattel, absence of liability to Spaulding is equally clear. Parry's witnesses testified that when the ladder was first put up it was properly secured. How or when the lashing was removed does not appear; nor is there any finding or evidence that any employee of Todd ever had notice that the lashing was missing. Gangway guards, who were members of the ship's crew, were stationed at the head of the ladder and took charge of the use of the ladder on behalf of the ship. Larsen, the security officer testified that it was his duty to see that the gangway was secure. Spaulding also testified that it was the deck department's duty. To impose liability on the supplier of a dangerous chattel it must appear that he (a) knows or should realize that the chattel is or is likely to be dangerous for the intended use; and (b) has no reason to believe that those for whose use it is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition.[5] While no New Jersey case on the point has been found we have no reason to think that its courts would not follow the common law rule of the Restatement.[6] The conditions essential to establish Todd's liability as the supplier of a dangerous chattel were not established.

■ On the assumption that New Jersey law governs, the conclusion that Todd was not liable to Spaulding disposes not only of Parry's claim to indemnity but also of its claim to contribution, in the absence of a contractual duty by Todd (not even asserted) to indemnify or contribute. It will suffice to refer to our recent discussion in Slattery v. Marra Bros., Inc., supra.

In the foregoing discussion we have assumed that the rights of the parties depend upon the law of New Jersey. We now assume that the maritime law governs them. In awarding contribution the district court reasoned that the suit "dealt with a mari-

---

3. Restatement of Torts, §§ 343, 388.

4. Restatement of Torts, § 340; Rooney v. Siletti, 96 N.J.L. 312, 313, 115 A. 664; Nauman v. Central & Lafayette Realty Co., 137 N.J.L. 428, 60 A.2d 242, affirmed 1 N.J. 124, 62 A.2d 218. See also Vorrath v. Burke, 63 N.J.L. 188, 190, 42 A. 838; Falk v. Stanley Fabian Corp.,

115 N.J.L. 141, 144, 178 A. 740; Plotner v. Great A. & P. Tea Co., 59 Ohio App. 367, 370, 18 N.E.2d 409; Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134.

5. Restatement of Torts, § 388.

6. Cf. Gaglione v. J. S. Coffin, Jr., Co., 137 N.J.L. 303, 59 A.2d 806.

time tort"; that the jury's special verdict established that both Parry and Todd were negligent; that the right to contribution between tort-feasors has long been recognized in admiralty; and that this right "peculiar to the law of admiralty" may be enforced on the law side of the court. The judge did not elaborate his statement that the suit dealt with a maritime tort. Spaulding's claim against Parry under the Jones Act depended on the maritime law and if the ladder from the ship's rail to the dock can be considered part of the vessel, as was the ship's gangplank in The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L. Ed. 1633, the admiralty would have had jurisdiction over Spaulding's claim against Todd, had he asserted one. But even on the assumption that Spaulding's rights as against Todd depend on the maritime law it does not follow that he could have recovered. Todd was not subject to the Jones Act. Prior to the Jones Act Spaulding could not have recovered even against the shipowner, for he would have assumed the risk of using a ladder the condition of which was known to him and was caused by the neglect of fellow seamen whose duty it was to lash it to the ship's rail.[7] Todd's duty to Spaulding was certainly no greater than the shipowner's; indeed it was less, for as against Todd he had only the rights of an "invitee." Those rights the maritime law has taken by analogy from the common law.[8] As we have already shown, the common law of New Jersey does not permit an "invitee" to recover if he is aware of the dangerous condition and realizes—and thus assumes—the risk involved therein.[9] Consequently, on the assumption that maritime law is applicable, we see no basis on which Spaulding could hold Todd liable for his injuries, and since Parry and Todd were not joint tort-feasors, Parry's claim for contribution necessarily fails.

Judgment reversed and third party complaint dismissed.

7. See Robinson on Admiralty, p. 309.

8. See Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237, 238; Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995, 996; Militano v. United States, 2 Cir., 156 F.2d 599, 602; Guerrini v. United States, 2 Cir., 167 F.2d 352, 354. Cf. "Uniformity in Maritime Law," 64 Harv.L.Rev. 246, 264 (1950).

9. See note 4 supra.