Carl V. DANIELS, Jr., and James E.
Speeney, Appellants,

v.

FLORIDA POWER & LIGHT COM-
PANY, Appellee.

No. 19924.

United States Court of Appeals
Fifth Circuit.

May 8, 1963.

Jacob Rassner, New York City, Monte
K. Rassner, Miami, Fla., for appellants.

T. J. Blackwell, Samuel J. Powers, Jr.,
P. R. Larkin, Jr., Blackwell, Walker &
Gray, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and
JONES and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellants, Daniels and Speeney, filed
separate libels in personam against Hess
Fuel Oils, Inc., their employer, and Flori-
da Power & Light Company, appellee, to
recover for personal injuries which al-
legedly arose out of the unseaworthiness
of a vessel owned by Hess on which they
were employed, and the negligence of
Florida Power.[1]  Their claims against
Hess were settled prior to trial, and the
consolidated causes proceeded against
Florida Power.  The libels were dis-
missed by the trial court for failure to
establish negligence on the part of Flor-
ida Power after all proof of liability had
been submitted by appellants.  Unsea-
worthiness was not plead against Florida
Power but it was unsuccessfully asserted
in argument just prior to dismissal.

1. Their separate causes were consolidated for trial and for appeal.

Appellants were captain and deck engineer, respectively, of the tugboat BECKY. The tug and GATCO Barge No. 40 were engaged in transporting oil from Port Everglades, Florida to the Florida Power & Light Company plant at Dania, Florida, on the Dania Canal. Appellants had been engaged in this work for some months, and almost daily. The tug and barge tied up on the night in question at the dock of Florida Power, and within three feet of it. The area was well lighted, and the waters of the canal were calm.

A ladder, owned by Florida Power, and usually found on the dock, was customarily used to span the three foot space between the dock and the barge. Employees of Florida Power used it for the purpose of going on the barge to arrange discharge of the fuel.

The ladder was twelve to fifteen feet in length, twelve inches in width, constructed of aluminum, with two boards affixed to the top of the ladder rungs running lengthwise of the ladder. There were either wooden cross pieces to serve as steps on top of the boards or sandpaper strips serving the same purpose at the time of the accident. This point is disputed but immaterial. The only employee of Florida Power present at the scene had used the ladder to board the barge but it was already in use at the time. Daniels had used it at least three times that night in going to and from the barge. Both he and Speeney had used it at least one hundred times in the past. The ladder was not fastened to the dock. It may or may not have been lashed to the barge although there was a rope attached to it for that purpose. No employee of Florida Power put the ladder in use. Speeney did not put it in use. Daniels could not remember whether he put it in use but did not deny doing so. The ladder led upward from the barge to the dock at an angle of fifteen to twenty degrees.

At any rate, while in the process of going from the barge onto the dock, Daniels lost his balance and fell into the shallow water in the space between the barge and dock, striking his head on either the barge or the dock in falling. Speeney jumped overboard to help him and was also disabled. The employee of Florida Power, being then on the barge, finally pulled both of them from the water without leaving the barge.

There was no evidence that there was anything at all defective about the ladder itself, either patent or latent. Appellants were satisfied to rest their case on the fact that the ladder had no handrails, and that it would slide on the concrete dock and metal barge because it was made of aluminum Daniels testified that the ladder slipped as he started up it. He could not remember which way, or whether it was the end resting on the dock, or barge, or both that slipped.

Three errors are assigned on this appeal. First, it is contended that maritime law imposes liability on the owner and supplier of a defective gangplank for injuries sustained by a business invitee or crew member while using the gangplank in a foreseeable and authorized manner. Second, the same contention is made, but based on the Florida law of negligence as respects the duty owed a business invitee. These assignments will be considered together since they both rest on an allegedly defective ladder constituting negligence. The last assignment is that Florida Power is liable under the unseaworthiness doctrine for making the vessel of another unseaworthy in supplying a defective, inadequate and unsafe ladder to serve as a gangplank in going to and from the premises of appellee.

The difficulty that appellants have in overcoming the finding of no negligence by the District Court is several-fold. There was nothing inherently dangerous about the ladder. It was not put in use by Florida Power. There was no duty on Florida Power to supply a ladder in the first place. Even if it be argued that customary use with knowledge of Florida Power imposed some duty, our attention is not called to any theory whereunder a duty was imposed on Florida Power under these facts to

supply a ladder that would not slip or one with handrails on it. Furthermore, appellants had used the ladder many times before, and even on the night of the accident; and such risk or danger, if any, as attached to the use of the ladder was so reasonably apparent as to be a bar under the circumstances. The trier of the facts concluded that there was no negligence and we agree, considered both from the standpoint of maritime and Florida law. See Spaulding v. Parry Nav. Co., 2 Cir., 1951, 187 F.2d 257; Hickory House, Inc. v. Brown, Fla.1955, 77 So.2d 249.

■ We come then to the claims insofar as they rest on the unseaworthiness doctrine. A seaman sustaining injuries by reason of the unseaworthiness of a ship or her tackle may recover compensatory damages, termed an indemnity, from the owner. The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; and Knauth's Benedict on Admiralty, Sixth Ed., p. 255. See also Gilmore & Black, The Law of Admiralty, § 6–38, p. 315 et seq. for a full discussion of the scope and nature of the remedy under the doctrine of unseaworthiness.

Courts have refused to apply the doctrine to hold the owner of a ship under a bare-boat or demise charter. Vitozi v. Balboa Shipping Company, 1 Cir., 1947, 163 F.2d 286; and Muscelli v. Frederick Starr Contracting Company, 1947, 296 N.Y. 330, 73 N.E.2d 536. Contra: Cannella v. Lykes Bros. Steamship Co., 2 Cir., 1949, 174 F.2d 794, where the proof showed an unseaworthy condition when the ship was delivered to the charterer.[2] The Court of Appeals for the First Circuit to some extent limited the teaching of Vitozi in this respect in Pichirilo v. Maysonet Guzman, 1 Cir., 1962, 290 F.2d 812, reversed on another ground, 1962, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205, by indicating that the rule, just as

Cannella holds, might not extend to cases where the unseaworthy condition preceded the demise.

The refusal of the District Court to apply the doctrine to hold a husbanding agent, not the employer of the seaman and who did not operate and control the vessel at the time of the injury was affirmed in Romero v. International Terminal Operating Company, 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368. The case was remanded by the Supreme Court for trial on the claim based on negligence, as distinguished from unseaworthiness, with the following statement:

> "Petitioner made claims based both on the Jones Act and the general maritime law against Garcia & Diaz, Inc. At the pre-trial hearing the District Court concluded that Garcia & Diaz was not Romero's employer and did not operate and control the vessel at the time of the injury. These issues were properly adjudicated, and thus the claims for unseaworthiness and maintenance and cure were properly dismissed. However, the District Court did not consider, and its disposition of the case did not require it to consider, whether petitioner was asserting a claim based upon the negligence of Garcia & Diaz; a claim independent of the employment relationship or operation and control. Thus it is necessary to remand the case for further proceedings as to this respondent."

■■ The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel. The usual relationship for recovery has been referred to as three-cornered: master, i.e., owner or operator, vessel and shipworker. Dimas v. Lehigh Valley

2. Vitozi and Cannella involved stevedores claiming the rights of seamen under Seas Shipping Company v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Muscelli involved a seaman employed by the charterer.

Railroad Company, 2 Cir., 1956, 234 F.2d 151. The sole connection of the dock owner here with the ship on which the injured seamen were employed was in the tacit allowance of the use of the ladder by the seamen. The dock owner did not occupy the position of owner or operator of the vessel. The refusal of the District Court to apply the doctrine was proper.

Having already found from a careful consideration of the record that appellant failed to prove negligence, it follows that the case is free of error, and the judgment of the District Court must be and is

Affirmed.[3]

Bratton, Circuit Judge, dissented in part.

---

3. We do not reach the motions to dismiss filed in this court by appellee.