Joseph J. CASTEL, Plaintiff,

v.

MOLLER, A. P., a corporation, Defendant.

No. C–74–1439–WWS.

United States District Court, N. D. California.

Dec. 12, 1977.

Philip R. Weltin, Weltin & Van Dam, San Francisco, Cal., for plaintiff.

Frederick W. Wentker, Jr., Lillick, McHose & Charles, San Francisco, Cal., for defendant.

### MEMORANDUM AND ORDER GRANTING MOTION FOR JUDGMENT N. O. V.

SCHWARZER, District Judge.

Plaintiff is a longshoreman who sues the defendant vessel owner for injuries sustained while loading containers on board the vessel. The injury occurred when a defective portable aluminum ladder belonging to the vessel, on which plaintiff had climbed to reach the top of a container, slipped, causing him to fall to the deck. After a bifurcated trial on the issue of liability only, the jury returned a verdict, finding both plaintiff and defendant negligent and allocating 15 percent of the fault to the latter. Defendant, having previously moved for a directed verdict, has moved for judgment n. o. v.

In the consideration of that motion, the Court must view the evidence in the light most favorable to plaintiff. So viewed, the evidence establishes the following facts.

Plaintiff was employed as a longshoreman by Crescent Wharf & Warehouse Co., a stevedore firm which served defendant as an independent contractor in the loading of the vessel. The manner of performance of the loading operation was under the control of Crescent; the vessel's control was limited to assuring that as a result of the stevedore's work, the cargo was properly stowed. During the night of the accident, the longshore gang of which plaintiff was a member was engaged in loading containers around hatch no. 5. In order to line up a container which was being lowered onto another container already on deck, plaintiff climbed a ladder which he found leaning against that container. Plaintiff assumed, although incorrectly, that other longshoremen were holding the ladder. In fact, the ladder was neither held nor lashed or blocked, and when plaintiff was near the top, it slipped, causing plaintiff to fall onto the deck and sustain injury.

The ladder was a straight ladder, made of aluminum, about ten to fifteen feet in length. It was one of several kept on board the vessel. These ladders were used by ship's personnel. They were also used at times by longshoremen along with ladders supplied by the stevedore contractor. The ladders are portable, light, readily susceptible to damage, and are considered expendable.

The evidence does not establish how the ladder came to be placed against the container. It does establish that as plaintiff began to climb the ladder, the vessel's mate who had the watch observed him from some eight to ten feet away. The mate noted that the ladder was defective in that it lacked rubber snubbers, i. e., feet. He testified that he warned plaintiff that the ladder was unsafe; inasmuch as plaintiff testified, however, that he heard no warning, the Court must assume for purposes of this motion that no warning was given.

The question before the Court is whether on this evidence, a finding of vessel negligence may be sustained. Since the 1972 amendment of Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, liability may no longer be premised on unseaworthy conditions but requires proof of negligence by the vessel. 33 U.S.C. § 905(b). In determining whether negligence has been established, the federal courts look to uniform land-based principles. *See, e. g., Hurst v. Triad Shipping Co.,* 554 F.2d 1237 (3rd Cir. 1977). The courts have been vigilant in guarding against any expansion of vessel liability which might restore the situation the 1972 amendment was intended to cure. *See, e. g., Wescott v. Impresas Armadoras,* 564 F.2d 875 (9th Cir. 1977) (holding that the trial court erred in refusing to grant the vessel's motion for directed verdict and

judgment n. o. v. where a longshoreman was injured while knowingly engaged in loading a vessel in a dangerous manner).

It is important at the outset to define the setting in which the instant claim arises. First, we are not faced with a defective condition of the vessel itself which could invoke the provisions of Sections 343–343A of the Restatement of Torts (Second) ("Restatement"). A portable ladder aboard a vessel, susceptible to damage by whoever may use it from time to time—whether ship's crew or longshoremen—and, because of its mobility, not subject to continuing control by the vessel, cannot be considered a "condition on the land" or, for that matter, a condition of the vessel itself. *See, Hurst v. Triad Shipping Co.*, above, at 1249 n. 35; *compare, Gallardo v. Westfal-Larsen & Co.*, 435 F.Supp. 484 (N.D.Cal.1977) (involving conditions on and about the vessel's fo'c'sle ladder, *i. e.*, a condition of the vessel itself).

■ Second, liability of the vessel is circumscribed by the provisions of Section 409 *et seq.* of the Restatement governing the liability of an employer of an independent contractor for negligent acts of the contractor or its employees. Where, as here, the employer retains no control over the details of the contractor's performance, he owes no duty of care with respect to the condition or manner of use of the contractor's equipment. *See,* Restatement, Sec. 414, comment c; *Munoz v. Flota Merchante Grancolombiana, S. A.*, 553 F.2d 837, 841 (2nd Cir. 1977); *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331, 333 (5th Cir. 1977). There is no question but that, had the ladder been the contractor's no liability could be imposed on the vessel either for the ladder's defective condition, or for the negligent manner in which plaintiff used it, or for any failure of defendant to warn plaintiff. *See, Hurst v. Triad Shipping Co.*, above.

The question then becomes whether the vessel may nonetheless become liable where the contractor's employee uses a ladder belonging to the vessel rather than one belonging to the contractor. The case must be distinguished from one involving the use of ship's winches, booms or other integral vessel equipment, the use of which by the contractor is contemplated by the contractual arrangement between vessel and contractor. *See, e. g., Streatch v. Associated Container Transp., Ltd.*, 388 F.Supp. 935, 942 (C.D.Cal.1975).[1] This is not such a case, first, because it involves no vessel gear necessary for the loading operation, and second, because the contractor is under an independent legal duty to furnish "at least one safe and accessible ladder for each gang working in a hatch" and to insure that the ladder "shall be of adequate strength and lashed, blocked or otherwise secured against shifting or slipping." 29 C.F.R. Sec. 1918.-25(a)(f); *see also* Secs. 1918.1, 1918.3.

■ In the circumstances of this case, then, the stevedore contractor had a duty to provide a safe ladder and to assure its safe use. Moreover, the vessel, having employed the stevedore to perform the loading operation as an independent contractor, was not liable for injury caused by the negligence of the stevedore or its employees. To permit liability to shift to the vessel on the basis of evidence that the stevedore failed to furnish a ladder as required and that as a result the longshoreman used a ship's ladder and used it improperly appears to the Court to be an unacceptable result.[2]

One further theory of liability remains to be considered, however. Section 388 of the Restatement imposes liability on suppliers of chattels known to be dangerous for their intended use as follows:

"One who supplies directly or through a third person a chattel for another to use

1. In *Streatch v. Associated Container Transp., Ltd.*, 388 F.Supp. 935 (C.D.Cal.1975), the court held that if the defendant vessel owner was a commercial licensor of a defective cargo vehicle which it supplied to the stevedore, strict liability could be imposed for defects in the vehicle. The strict liability standard clearly does not apply here.

2. One of the irrational aspects of such a result is that it would reward the stevedore contractor for its failure to supply the ladder as required by law by enabling it to recoup its compensation payments out of any judgment in plaintiff's favor. Under *Shellman v. United States Lines, Inc.*, 528 F.2d 675 (9th Cir. 1975), *cert. denied*, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976), neither the negligence of the stevedore nor that of the longshoreman

its subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

■ Inasmuch as the evidence shows longshoremen from time to time used the vessel's portable ladders, with the vessel's knowledge, the vessel must be considered to be a supplier. *See,* Sec. 388, comment c. The evidence further shows that in this case the mate observed that the ladder was defective as plaintiff was about to climb it. There is no evidence, however, indicating whether the ladder was defective before the longshoremen began to use it or whether it was damaged while in use by longshoremen.

Section 388 does not appear to support the imposition of liability in the absence of proof that the injury was caused by a defect or dangerous condition existing in the chattel at the time the defendant supplied it. Where as here there is no evidence from which the jury could infer that the rubber snubbers were missing when the longshoremen first began to use the vessel's ladder, one of the conditions for imposing liability is lacking.

defeats the former's judgment lien. Thus, to permit recovery in this case would produce the incongruous result of compensating the stevedore, who would otherwise have to bear the loss caused by injury to a longshoreman during the loading operation, because he failed to provide the ladder the law requires him to provide.

3. In *Wescott v. Impresas Armadoras,* above No. 76–1611, 564 F.2d 875 (9th Cir., 1977), the Ninth Circuit Court of Appeals said, in this connection:

In addition, Section 388 requires proof that the supplier had "no reason to believe that [the user] . . . will realize its dangerous condition." The absence of rubber snubbers on the ladder's feet was an obvious defect; it was readily observable and in addition would be obvious from the contact of metal with metal on the deck. Anyone using such a ladder on board with the slightest degree of care would be aware of this defect.[3] *Cf., Daniels v. Florida Power & Light Co.,* 317 F.2d 41, 42–43 (5th Cir. 1963); *Spaulding v. Parry Nav. Co.,* 187 F.2d 257, 260 (2nd Cir. 1951). Accordingly, no liability could be imposed on defendant as supplier of a chattel.

For the reasons stated, defendant's motion is granted.

IT IS SO ORDERED.

"Thus, even had Impresas known of an alleged lack of proper fixtures, Brady's employees were aware of the existing condition, and chose to proceed even though they knew that the pan in the hatch creating the danger could not be controlled. Given the evidence in the record and all reasonable inferences which can be drawn from the evidence, there is no basis for placing any liability upon the shipowner herein." (P. 883.)