W. EUGENE DAVIS, Circuit Judge,
dissenting.
Because I would vacate the district court’s dismissal and remand this case for trial, I respectfully dissent.
The majority, relying on Daniels v. Florida Power & Light Co., 317 F.2d 41 (5th Cir.1963) and National Marine Service Inc. v. Gulf Oil Co., 433 F.Supp. 913, 919 (E.D.La.1977), concludes that regardless of the facts in any particular case a wharfowner never owes a duty to a crewmember of a vessel to provide safe access from the vessel to the wharf. The majority reads too much into those cases.
In Daniels, a deck engineer fell off a ladder while climbing from his barge to a dock; the distance between the barge and the dock was three feet; the ladder led upward from the barge to the dock at an angle of 15 to 20 degrees; the ladder was owned by the dock owner, but put in use by barge employees. Following a trial on the merits, the trier of fact concluded that the wharfowner was not negligent, and we affirmed, saying:
There was nothing inherently dangerous about the ladder. It was not put in use by Florida Power. There was no duty on Florida Power to supply a ladder in the first place. Even if it be argued that customary use with knowledge of Florida Power imposed some duty, our attention is not called to any theory whereunder a duty was imposed on Florida Power under these facts .to supply a ladder that would not slip or one with handrails on it. Furthermore, appellants had used the ladder many times before, and even on the night of the accident; and such risk or danger, if any, as attached to the use of the ladder was so reasonably apparent as to be a bar under the circumstances.
In National Marine, a tug crew member fell as he attempted to walk across his employer’s ladder to get from a barge to the defendant’s wharf. The barge was level with the dock and the ladder horizontal. Denying the vessel owner’s claim for contribution or indemnity against the dock owner, the trier of fact concluded that the dock owner was not negligent. National Marine, 433 F.Supp. at 920. In both Daniels and National Marine, judgment was rendered after a full trial and after the district court found no negligence on the part of the dock owner.
Injuries occurring on gangplanks between a vessel and a wharf are considered maritime torts and are governed by the general maritime law. Brady v. Roosevelt S.S. Co., 317 U.S. 575, 577, 63 S.Ct. 425, 87 L.Ed. 471 (1943); Tullis v. Fidelity & Ca. Co., 397 F.2d 22 (5th Cir.1968). Thus a wharfowner owes a seaman, like any other business invitee on his property, the duty to “exercise reasonable care in all the circumstances.” Kermarec v. Compagnie Generate Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Casaceli v. Martech Intern., Inc., 774 F.2d 1322, 1328-29 (5th Cir.1985); Bubla v. Bradshaw, 795 F.2d 349, 353 (4th Cir.1986); Quam v. Mobile Oil, 496 F.Supp. 986, 988 (S.D.N.Y.1978), aff'd, 599 F.2d 42 (2d Cir.), cert. denied, 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 321.
Whether, in the exercise of reasonable care, a wharfowner is responsible for furnish *336 ing a gangplank or other means of access from the vessel to the wharf depends upon the facts and circumstances of each case. Frequently, the wharfowner is purely passive and does nothing more than provide a location for the vessel to land and take on or discharge cargo. In such a case, the wharf-owner does not undertake to provide a gangplank because everyone assumes the vessel will provide its crew with adequate means of egress and ingress. In such a case, the vessel is solely responsible for providing an inadequate gangway.
But that does not mean the wharfowner, in the exercise of reasonable care, never is at fault for failing to furnish a gangplank or other access to the wharf. Based on the summary judgment evidence presented in this case, plaintiff presented a genuine issue of material fact regarding the wharfowner’s negligence in failing to provide a gangplank.
According to the summary judgment evidence, the barge OSPREY called regularly at the Citgo refinery. At the dock where the barge was usually loaded (dock D), Citgo had a safe gangway available for the crew to use. Citgo knew that the barge OSPREY carried no gangway. Citgo directed the barge OSPREY to Dock “A,” which had no ingress/egress system. This was done for Cit-go’s convenience, to better enable it to handle other ships. Because it had called to load fuel, the barge OSPREY was riding high when it approached the dock; the distance from the dock to the barge’s deck exceeded twenty feet. A factfinder could conclude that by failing to provide a gangway for the barge OSPREY, Citgo deviated from its established custom and practice of providing a gangway to this vessel and similar vessels. Under these circumstances, a factfinder could conclude that Citgo was negligent in directing this vessel to dock D where no gangway was provided when it knew the barge in reliance on an established custom did not have a means of access to the dock.
For the reasons stated above, I would vacate the summary judgment and remand this case for trial.