[Cite as *Phillips v. Am. Elec. Power Co.*, 2011-Ohio-6731.]

STATE OF OHIO, JEFFERSON COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| MATTHEW PATRICK PHILLIPS, et al. | ) | CASE NO. 10 JE 13 |
| | ) | |
| PLAINTIFFS-APPELLANTS | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| AMERICAN ELECTRIC POWER, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas of Jefferson County, Ohio
Case Nos. 07 CV 684; 09 CV 226

JUDGMENT:      Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:      Atty. Frank Bruzzese
Bruzzese & Calabria
P.O. Box 1506
100 N. Fourth Street
Steubenville, Ohio 43952

For Defendant-Appellee:      Atty. Karen E. Kahle
Asplundh Tree Expert Co.      Steptoe & Johns, PLLC
1233 Main Street, Suite 3000
P.O. Box 751
Wheeling, WV 26003

Atty. Amy M. Smith
Steptoe & Johns, PLLC
Chase Tower – Sixth Floor
P.O. Box 2190
Clarksburg, WV 26302-2190

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: December 22, 2011

[Cite as *Phillips v. Am. Elec. Power Co.*, 2011-Ohio-6731.]
WAITE, P.J.

{¶1}   Appellant, Matthew Patrick Phillips ("Matthew" or "Appellant"), by and through his duly appointed guardians, Paula and Martin Phillips, appeals the entry of summary judgment against him and in favor of Appellee, Asplundh Tree Expert Company ("Asplundh" or "Appellee"), by the Jefferson County Court of Common Pleas in this negligence action.  In 2007, Matthew suffered severe injuries allegedly caused by a short circuit in a 7200-volt distribution line owned by Defendant, Ohio Power Company dba American Electric Power Ohio ("AEP").  Appellants contend that a rotted and hollow wild cherry tree fell onto the overhead primary line of AEP's electrical power distribution system in the woods behind Matthew's home, which started a chain of events that proximately caused his injuries.  Appellants further contend that AEP and Asplundh, one of AEP's independent contractors hired for tree-trimming purposes, failed to inspect, trim, and manage the tree at issue in this case in conformity with AEP's vegetation management program policies and industry standards.

{¶2}   The record fails to show that Appellee, as an independent contractor, was directed by AEP to perform tree service in the area in which the tree at issue was located; was obligated under its contract with AEP to independently determine which parts of AEP's distribution circuit were to be trimmed; or that Appellee actually participated in any decision-making process regarding AEP's vegetation management plan that would have affected the tree at issue.  Appellants cannot establish evidence of any duty owed by Appellee to Matthew, and without proof of such a duty there can be no negligence.  The judgment of the trial court is affirmed.

## History of the Case

{¶3} On March 1, 2007, a thunderstorm occurred in the area where Appellant Matthew Phillips and his parents, Martin and Paula Phillips lived. Their house was located in the Stanton Woods subdivision of Wintersville, Ohio. During the storm, a branch from a tree fell across an Ohio Power electrical distribution line located behind the Phillips' home. Severance of the line caused a power outage at the Phillips' home. Matthew and his father attempted to power their home by means of a portable electric generator. In the process of trying to operate the portable generator, Matthew received an electrical shock and suffered very severe injuries, including permanent brain injuries.

{¶4} On December 31, 2007, Appellants sued American Electric Power Company, Inc., AEP Ohio, Ohio Power Co., Ohio Power Company Inc., AEP Energy Services Inc., and Columbus Southern Power Co. The defendants will be collectively referred to as AEP or the AEP defendants. On November 7, 2008, Appellants amended their complaint to add Asplundh as a defendant. On April 29, 2009, Appellants filed a separate cause of action against American Electric Power Service Corporation ("AEP-SC"). Asplundh's connection to the AEP defendants was through AEP-SC, in that the two defendants had entered into a contract on April 9, 2002, for Asplundh to perform right of way tree maintenance services.

{¶5} Appellants' theory as to how Asplundh's liability for Matthew's injuries, as far as we are able to surmise, is as follows. Appellants allege that a severe thunderstorm blew down one or more rotted trees or branches behind their home.

The fallen trees or branches apparently hit an AEP power line, causing the power to go out at Appellants' residence. This caused them to try to connect their portable generator. The power line in this case consists of two main wires; one of the wires is traditionally designated as the "hot" wire, and the other as neutral. Appellants allege that the two wires became coupled due to the fallen branches, creating a completed electrical circuit. Appellants theorize that the electricity from this circuit somehow traveled around the electrical transformer on the pole outside Appellants' house, bypassed the grounding wires located at the pole, traveled down the service line to Appellants' house, through the meter box, into their breaker box, bypassed the grounding line at the breaker box, traveled through the ground circuit wiring of the house, went around an electrical generator transfer switch installed by Appellants, continued through the grounding line to a secondary electrical outlet box, and then connected to the metal chassis of the outlet box. Appellants then posit a variety of theories as to how the electricity passed through Matthew via the outlet box, the portable generator, or from the ground.

{¶6} On December 13, 2010, Appellants entered into a settlement with all of the AEP defendants except for Asplundh, and all claims against those defendants were dismissed. This settlement included the dismissal of all claims against AEP-SC, with whom Asplundh had contracted to do right of way tree maintenance. The only claims remaining in the lawsuit were directed at Appellee.

{¶7} Appellants' complaint raises a variety of claims against Asplundh. Appellants asserted an ordinary negligence claim, alleging that Asplundh failed to

maintain AEP's easement, failed to remove foreseeable safety hazards, and failed to fulfill its contractual duties to inspect and manage vegetation for AEP. Appellants allege that they were subjected to an ultra-hazardous danger by Asplundh's recklessness. Appellants allege that Asplundh breached a duty imposed by safety statutes and regulations regarding electrical and hazardous substances and vegetation management. Appellants argue that Asplundh failed to warn, prevent or remedy unnamed defects. Finally, Appellants claim that Asplundh caused them to be exposed to hazardous or toxic substances. Appellants' allegations against Asplundh are intrinsically connected to the contract to perform right of way maintenance. Thus, the overall claim is for negligent or reckless performance of a contract. Every claim raised by Appellants is dependent on the existence and terms of the contract. The issue on appeal is whether summary judgment was properly granted to Asplundh on the grounds that Asplundh owed no duty of care to Appellants (and therefore breached no duty of care) in light of the contract that Asplundh entered into with AEP-SC.

{¶8} On February 8, 2010, Appellee filed a motion for summary judgment. Appellee argued that it owed no duty of care to Matthew because AEP determined the locations at which Appellee was assigned to work, and because AEP never assigned Asplundh to inspect or service the area at issue in this case. On May 10, 2010, the trial court granted Appellee's motion for summary judgment. The trial court found no evidence of a duty owed by Asplundh to Appellants:

**{¶9}** "The record contains no evidence that the Defendant Ohio Power Company or the AEP Defendants assigned Defendant Asplundh to work on the portion of the electrical circuit in the area of the tree which allegedly caused the injuries to the Plaintiff. Nor have the Plaintiffs produced evidence that it was the responsibility, or duty, of Defendant Asplundh to determine which parts of the AEP distribution circuit were to be trimmed. Rather the evidence establishes that, at most, the AEP Defendants determined what trimming was to be done and then would assign that work to Defendant Asplundh.

**{¶10}** "The record contains no evidence that Defendant Asplundh created a condition which caused the subject tree to fall or failed to trim said tree after being put on notice, in any manner, of the need or obligation to trim said tree." (5/10/10 J.E., p. 2.)

**{¶11}** The trial court issued a nunc pro tunc judgment entry on May 25, 2010, adding the "no just reason for delay" language required by Civ.R. 54(B) in order that the judgment would be final and appealable. This appeal followed.

**{¶12}** In the first eight of Appellants' assignments of error they argue that summary judgment was inappropriate based on a duty on the part of Appellee toward Appellants, either contractual or implied. For this reason, they will be addressed together for the purposes of judicial economy. The ninth assignment of error deals with the question of joint liability and will be treated separately.

<u>Summary Judgment Standard</u>

**{¶13}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. Id.

**{¶14}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, in the face of a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in

that party's favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.

ASSIGNMENT OF ERROR NO. 1

**{¶15}** "DUTY TO INSPECT—ASPLUNDH NEGLIGENTLY FAILED TO INSPECT THE VEGETATION WHICH OBVIOUSLY THREATENED THE POWER LINES"

ASSIGNMENT OF ERROR NO. 2

**{¶16}** "AN ACT OF OMISSION CAN BE NEGLIGENCE"

ASSIGNMENT OF ERROR NO. 3

**{¶17}** "THE TRIAL COURT ERRED WHEN IT HELD THAT ASPLUNDH OWED NO DUTY AS A MATTER OF LAW"

ASSIGNMENT OF ERROR NO. 4

**{¶18}** "FORESEEABILITY—ASPLUNDH HAD A DUTY TO ANTICIPATE"

ASSIGNMENT OF ERROR NO. 5

**{¶19}** "ASPLUNDH WAS ALLOWED TO TRIM THE TREE—THE TREE OWNER HAS NO CONTROL OR DUTY"

ASSIGNMENT OF ERROR NO. 6

**{¶20}** "THE DEFENDANTS WERE FIGHTING AMONG THEMSELVES-THEREBY CREATING AN ISSUE OF FACT"

ASSIGNMENT OF ERROR NO. 7

**{¶21}** "THE HAZARDS OF TREES KNOCKING DOWN POWER LINES AND RESULTANT ELECTRICAL SHOCK INJURY ARE FORESEEABLE"

<u>ASSIGNMENT OF ERROR NO. 8</u>

**{¶22}** <u>"DUTY TO TRIM TREES. BOTH—THE UTILITY AND TREE-TRIMMING CONTRACTOR HAVE THE DUTY TO IDENTIFY AND TRIM DANGER [SIC] TREES"</u>

**{¶23}** The crux of Appellants' appeal is their fundamental disagreement with the trial court's conclusion that Asplundh owed no duty of care to them. The parties in this case agree that if no duty of care is owed, then the trial court properly granted summary judgment to Asplundh. The existence of a duty of care is fundamental to a negligence claim: "It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. The existence of a duty depends on the foreseeability of the injury." (Citations omitted.) *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188.

**{¶24}** Appellants contend that Asplundh did owe them a duty of care, despite the absence of anything specific in the Asplundh contract that would have required the removal of the tree that apparently fell in Appellants' yard. Appellants contend that Asplundh should have inspected the area near their home because there had been many prior electrical outages in their general area. They contend that Asplundh was involved in the decision-making process to select which of AEP's circuit areas

were to be trimmed each year, despite the evidence establishing that AEP and its related companies, alone, made the final decisions about where Asplundh would conduct its vegetation maintenance and trimming. Appellants contend that Asplundh's authority to make suggestions at their annual meeting with AEP to determine vegetation maintenance gave rise to a duty to protect Appellants from a dangerous tree in the vicinity of their yard. Appellants appear to argue that Asplundh's failure to convince AEP to conduct tree maintenance on or near Appellants' property is itself a form of negligence. Appellants submit that it was Asplundh's failure to act that was the breach of their duty of care, and that the trial court erred by finding no proof Appellee owed them a duty of care and, thus, that there was no negligence. None of these arguments are supported by this record.

{¶25} In this case, the claim against Asplundh is one of failure to act. Appellants take issue with Appellees' failure to inspect Appellants' power lines and failure to remove the tree that supposedly fell and began the complicated chain of events leading to Matthew's injury. In a case of nonfeasance, the existence of a legal duty is critical and, unless a duty is established, the defendant's failure to act cannot and does not create liability. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 135, 20 OBR 166, 485 N.E.2d 287; *Taylor v. Continental Cas. Co.* (1945), 75 Ohio App. 299, 61 N.E.2d 919. The existence of a duty is a question of law for a court to determine. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶26} Relevant to the motion for summary judgment were the depositions of Ernest DiBacco, one of Appellee's general foremen; Michael Chedester, a forestry

supervisor for AEP; and Andrew Mitchell, a service field forester for AEP. Appellants do not appear to contest the fact that Chedester and Mitchell were responsible on AEP's behalf for the Wintersville/Wintersville circuit that included Appellants' home. We again note that Appellants have settled their claims against all of the AEP defendants, and Asplundh is the sole remaining defendant in this case.

**{¶27}** Chedester explained that the selection of circuits to be serviced involved an elaborate process at the start of each work year. (Chedester Depo., p. 21.) Chedester and his supervisors, in conjunction with systems distribution supervisors at AEP, would "analyze data, historical data regarding a circuit's particular performance regarding various causes of power interruptions, including vegetation." He testified that "collaboratively, [they] would reach an agreement on a work plan for a set group of circuits, or areas within circuits." (Chedester Depo., p. 21.) According to Chedester, Appellee only works where it is told to work by representatives of AEP. (Chedester Depo., pp. 107, 190-191.)

**{¶28}** According to Chedester, Appellee was the sole source for tree-trimming services to AEP from 2002 to the present. (Chedester Depo., pp. 106-107.) Chedester also testified that there was no record of any inspection of the Stanton Woods subdivision distribution line by an AEP employee between 2002 and 2007. (Chedester Depo., p. 40.) Chedester stated that the last foot patrol that he could recall with certainty that was conducted in the Wintersville/Wintersville circuit (which services Appellants) was in 1998. (Chedester Depo., p. 59.) Nelson Tree Service, Appellee's direct predecessor in performing tree-trimming maintenance, conducted

the 1998 foot patrol pursuant to a cyclic program that was abolished in 2000-2001 based on changes in management philosophy. (Chedester Depo., pp. 186-188.)

**{¶29}** Mitchell testified that Appellee was never assigned to trim trees in the Stanton Woods subdivision. (Mitchell Depo., p. 78.) Mitchell further testified that Appellee was to patrol only those areas identified by AEP. (Mitchell Depo., p. 32.) He testified that it was Mr. Chedester who decided the circuits and partial circuits that would be trimmed each year. (Mitchell Depo., p. 17.) This decision was solely in the hands of Mr. Chedester, and was made prior to the annual meeting that was set to map out the work plan for the year. (Mitchell Depo., p. 17.) AEP devoted their attention to the 8% of circuits with the worst performance in the previous year. (Mitchell Depo., p. 10.) AEP would then prioritize the list based on a variety of criteria. (Mitchell Depo., p. 14.) AEP assigned work only to certain well-defined sections of the circuit. (Mitchell Depo., p. 16.) AEP would prioritize the work it wanted to have done, and then mark these work areas on maps. (Mitchell Depo., pp. 15-16.) Asplundh was instructed to take these maps and perform only the work that was marked on the maps. (Mitchell Depo., p. 15.) Mitchell testified that Asplundh could not trim areas outside the map, and that there was no independent decision-making or freelancing involved on Asplundh's part. (Mitchell Depo., p. 31.)

**{¶30}** Andrew DiBacco testified that AEP made the decisions regarding which circuits were the worst performing circuits, not Asplundh. (DiBacco Depo., p. 86.) He further stated that AEP alone made the decisions regarding what work Asplundh was to perform each year. (DiBacco Depo., p. 14.) AEP prepares maps for Asplundh

marking the worst performing areas, and Asplundh would work in those areas. (DiBacco Depo., p. 15.) He also testified that within these assigned areas Asplundh work crews could decide which individual trees would be cut down or not. (DiBacco Depo, p. 92.) He noted that some Asplundh workers could add their suggestions and input at the annual planning meeting to decide what vegetation maintenance would take place for the year. (DiBacco Depo., pp. 85-86.)

{¶31} Appellants rely primarily on the deposition testimony of these three men to attempt to establish that Asplundh owed a duty to trim the tree in their yard and prevent the accident that occurred. However, this testimony does not support Appellants' conclusion. The testimony establishes that AEP, not Asplundh, made the decision regarding which circuit areas to trim, and Appellants' home was never included in Asplundh's assigned work areas. While some of Asplundh's employees may have made suggestions at the annual planning meetings, the record clearly reflects that the final decision was made by AEP, and there is no evidence of record to contradict this conclusion. Actually, the testimony indicates that the decision as to which circuits to include in the yearly maintenance was made prior to the annual meeting.

{¶32} As earlier mentioned, the circuit encompassing Appellants' residence is referred to as the Wintersville/Wintersville circuit. It contains 23 miles of power lines. Appellants' house is located in Stanton Woods subdivision of the Wintersville/Wintersville circuit. The testimony of Mr. Chedester and Mr. Mitchell were in agreement that AEP never assigned Asplundh to work in the Stanton Woods

subdivision prior to the accident on March 1, 2007. The record reflects that Asplundh was assigned to inspect the area only on May 1, 2007, two months after Matthew's accident. The previous Stanton Woods subdivision inspection was conducted in 1998, and that inspection did not involve Asplundh, but rather, Nelson Tree Service, Asplundh's predecessor.

**{¶33}** Appellee correctly states that it could not have a duty to trim a tree in Appellants' yard unless it first had a right to do so, and there are very specific statutes which prohibit a person from cutting, removing or injuring trees on private property. See, e.g., R.C. 901.51. If Appellee had no contractual authority to act as AEP's agent and enter the area where the tree was located, it would not only have been trespassing to have entered the property, but Asplundh would have risked committing a fourth degree misdemeanor crime and may have been liable for treble damages. R.C. 901.51.

**{¶34}** Appellants argue a number of times that Matthew's injury was foreseeable, and that the foreseeability of the injury in and of itself creates a duty for Appellee to remove the dangerous trees in and around their yard. This argument is incorrect. "[F]oreseeability alone is not always sufficient to establish the existence of a duty." *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 293, 673 N.E.2d 1311. This is especially true in nonfeasance situations in which the plaintiff is alleging that the defendant failed to affirmatively act to come to aid of a person in danger or failed to prevent a third party from harming another. *Littleton v. Good Samaritan Hosp. & Health Center* (1988), 39 Ohio St.3d 86, 92, 529

N.E.2d 449; *Gonzalez v. Posner*, 10th Dist. No. F-09-107, 2010-Ohio-2117, ¶13-15. In such situations, a duty arises only if the defendant shares a "special relation" with the plaintiff or the third person that justifies the imposition of the duty. *Estates of Morgan*, supra, at 293-294; *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769. In this appeal, the alleged relationship between Appellee Asplundh and Appellants only exists by virtue of the tree-trimming contract between Asplundh and AEP. No amount of foreseeability can create a contractual duty where none otherwise exists. Appellants' reliance on the foreseeability of Matthew's injury is misplaced and cannot support a reversal of the trial court's judgment.

**{¶35}** Appellants also argue that Asplundh had actual notice of the dangerous tree, but they have not submitted any proof such notice exists. Even if actual notice was proven in the record, this would not establish the existence of a duty. Actual notice relates to foreseeability, and as previously stated, foreseeability alone does not create a duty or liability for negligence. "Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 645, 597 N.E.2d 504.

**{¶36}** Appellants rely on *Brady-Fray v. Toledo Edison Co.*, 6th Dist. No. L-02-1260, 2003-Ohio-3422, in an attempt to claim that Asplundh can be held liable for failure to properly trim trees and branches. In *Brady-Fray*, the plaintiff, Steven Kampfer, was electrocuted when he attempted to trim some dead tree limbs near a

power line owned by Toledo Edison. Asplundh was under contract to conduct tree-trimming services for Toledo Edison. The evidence was clear in *Brady-Fray* that Asplundh was under a contractual duty to inspect and maintain the area where the accident occurred: "It is also undisputed that Edison contracted with Asplundh to trim trees in the area of the Kampfer properties." Id. at ¶24. This single fact distinguishes *Brady-Fray* from the instant appeal and renders it inapplicable, because in the matter before us there is no evidence that Asplundh was under any contractual obligation to inspect or trim trees at or near Appellants' home. In fact, the evidence reflects just the opposite.

{¶37} Appellee has interpreted Appellants' arguments as an attempt to impose some type of rescue requirement, or some duty to take positive action in aid of another regardless of the relationship of the parties. This does appear to be Appellants' theory, and this theory is not consistent with Ohio law. "The law imposes a duty to refrain from active misconduct that causes a positive injury to others, but does not impose a duty to take affirmative action to aid or protect another." *Homan v. George* (1998), 127 Ohio App.3d 472, 475, 713 N.E.2d 432. As we have previously stated: "The general rule is that a person owes no duty to act for the protection of others: 'The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.' Restatement of the Law 2d, Torts (1965), Section 314." *Mullins v. Comprehensive Pediatric & Adult Medicine, Inc.*, 7th Dist. No. 07 MA 144, 2009-Ohio-1310, ¶76. Although negligence can occur through a failure to act when one

has a duty to act, a plaintiff must still prove at the outset that there was a duty to act. The fact that a tree maintenance contractor such as Asplundh may be able to help prevent potential harm from old or rotting trees does not create a duty to do so.

{¶38} Appellants have not established that Appellee Asplundh had a duty to inspect or trim the tree that allegedly caused the accident on March 1, 2007. The decision as to where Asplundh was to perform its contract for vegetation maintenance services was determined solely by the AEP defendants, and they are no longer a part of this case. The record reveals that Asplundh was not assigned to trim vegetation near Appellants' home. The mere fact that Asplundh might have been able to trim the tree outside of its contractual duties, or may even have known that a tree may be a potential hazard, does not create a duty to act. Appellants' first eight assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 9

{¶39} "THE LIABILITY OF THE AEP DEFENDANTS AND ASPLUNDH IS JOINT LIABILITY."

{¶40} Appellants argue that joint liability exists between Asplundh and AEP in this matter. Appellants cite *Logsdon v. Main-Nottingham Inv. Co.* (1956), 103 Ohio App. 233, 141 N.E.2d 216, in support of their argument. *Logsdon* is a landlord/tenant case involving facts that are difficult to correlate to the facts in the instant appeal. More importantly, however, Appellants entered into a settlement involving all claims and disputes against AEP, AEP Ohio, Ohio Power Company, and American Electric

Power Service Corporation. These claims were dismissed on December 13, 2010, pursuant to the settlement. Hence, any issue involving joint liability is now moot.

**{¶41}** In addition, no liability exists for the principal if the agent who is alleged to have committed the negligence has no liability. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶20. As the trial court correctly determined that Asplundh (the agent) owed no duty to Appellants, the record reflects no negligence and, thus, no secondary liability on the part of AEP. Appellants' ninth assignment of error is overruled.

## Conclusion

**{¶42}** The trial court correctly concluded that Asplundh was under no contractual obligation to investigate or perform tree maintenance services in the area of Appellants' residence where this unquestionably tragic accident occurred. There is no other basis on which to find that Asplundh owed a duty to Appellants. Without the existence of a duty, there can be no finding that negligence occurred. Appellants' first eight assignments of error deal in one respect or another with the duty element of a negligence claim. Because there is no proof in this record that a duty existed, the trial court was correct in its judgment. Appellants' first eight assignments of error are overruled. In Appellants' ninth assignment of error they assert that there is joint liability between AEP and Asplundh. The record reveals that the AEP defendants have been dismissed from the matter. Therefore, the issue of joint liability is moot. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.

APPROVED:

_____
CHERYL L. WAITE, JUDGE